No. 04-189

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 365

LONNIE D. COLLINS,

       Plaintiff and Appellant,

   v.

GAIL N. COLLINS,

       Defendant and Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                  In and for the County of Yellowstone, Cause No. DR 02-858,
                  The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       Jeffrey A. Simkovic, Simkovic Law Firm, Billings, Montana

       For Respondent:

       Charles E. Hansberry, Holland & Hart, LLP, Billings, Montana

Submitted on Briefs:  August 11, 2004

Decided:  December 21, 2004

Filed:

_____
                    Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Appellant Lonnie D. Collins (Lonnie) appeals from the Findings of Fact and Conclusions of Law entered by the Thirteenth Judicial District Court, Yellowstone County, awarding marital assets to his former spouse, Gail N. Collins (Gail). We affirm.

¶2 We restate the following issues on appeal:

¶3 1. Whether the District Court erred in determining the value of the marital estate.

¶4 2. Whether the District Court erred in distributing the marital estate.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Gail and Lonnie were married on December 31, 1972, in Billings, Yellowstone County. At the time of the dissolution, the parties had been married nearly 32 years. When they were first married, Lonnie was working as a switchboardman for Burlington Northern Railroad and Gail briefly worked two jobs at El Café and Montgomery Wards in Billings, Montana.

¶6 In 1973, the parties moved to Laurel and purchased a house and three lots with joint assets. Between 1973 and 1978, Gail maintained and renovated the house as well as cared for Lonnie's mother as she battled with Alzheimer's disease. Gail also cared for three of Lonnie's children from another marriage during the same time period.

¶7 In 1979, Lonnie was injured in a railroad accident and received a $135,000 settlement in a claim against Burlington Northern. The proceeds of that settlement were used to purchase and move another house from Billings onto the lot in Laurel where their existing house was situated. The existing house and the new house were joined together at that time.

2

¶8 The couple also used the proceeds to set up an antique business, Blue Bell Businesses (Blue Bell), in the back portion of the new house. Although Blue Bell was set up as a *de facto* partnership, Gail eventually ran Blue Bell as a sole proprietorship and Lonnie operated a separate sole proprietorship selling antiques called Frogfur Businesses (Frogfur) under the business license for Blue Bell. Both Gail and Lonnie earned money from their respective businesses and expended the same on the real property, each other and the businesses. Lonnie also received auctioneer work after graduating from the Western College of Auctioneering in the 1980s. Gail had no other source of income.

¶9 On July 5, 2002, Lonnie obtained Gail's keys to the premises and locked her out of the residence. Barring her from the house, Lonnie forced Gail to move out of the residence and into the office/storeroom of Blue Bell. About a week later, a physical altercation ensued between Lonnie and Gail over Gail's alleged removal of certain items from the premises. The police responded to the situation and Gail was taken to the YWCA Gateway House. On July 29, 2002, Gail obtained a temporary order of protection against Lonnie.

¶10 On August 8, 2002, Lonnie and Gail signed documents prepared by a certified public accountant, Steven Cosner, entitled, "Joint Petition for Dissolution of Marriage, Declaration of Assets, Liabilities, Income and Expenses." The couple also signed a quit-claim deed transferring interest in the residence from Gail to Lonnie. Lonnie's disclosure in the documents did not include Frogfur's value and Gail did not have any input in their preparation.

¶11 Upon review of the documents, Gail called Lonnie to inform him the documents did

3

not accurately depict the property in her possession. Lonnie replied the documents had to appear equal in order to secure a divorce. Gail went ahead and signed the documents which were subsequently notarized.

¶12 On August 9, 2002, Lonnie filed the joint petition for dissolution in Yellowstone County and recorded the quit-claim deed with the Yellowstone County Clerk and Recorder. On August 12, 2002, Gail filed a response to the joint petition for dissolution and related documents claiming the original filing was signed under duress. On the same date, a final order of protection was issued by the Justice Court, City of Billings, continuing the terms and conditions of the July 29, 2002, temporary order of protection.

¶13 On January 3, 2003, Lonnie encumbered the real property with a deed of trust to secure a loan from CitiFinancial, Inc., in the amount of $44,050.

¶14 After the parties' separation, Gail attempted to run Blue Bell on her own. However, the business failed to be profitable or provide her with a livable income. Discouraged, Gail held a "garage sale" where she attempted to sell Blue Bell's inventory.

¶15 A trial was held on November 17, 2003. After trial, the District Court issued its Findings of Fact and Conclusions of Law on January 12, 2004, awarding 55% of the marital estate to Gail. Lonnie appeals.

**STANDARD OF REVIEW**

¶16 We review a district court's division of marital property to determine whether the findings of fact on which the court relied are clearly erroneous. *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26. If the findings are not clearly

4

erroneous, we will affirm the distribution of property unless the court abused its discretion. *Engen*, ¶ 26. To conclude that a district court abused its discretion in dividing marital property, we must determine that the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Engen*, ¶ 26.

¶17    The district court has broad discretion in determining the value of property in dissolution. Its valuation can be premised on expert testimony, lay testimony, documentary evidence, or any combination thereof. The court is free to adopt any reasonable valuation of marital property which is supported by the record as long as it is reasonable in light of the evidence submitted. *In re Marriage of Meeks* (1996), 276 Mont. 237, 242-43, 915 P.2d 831, 834-35.

## DISCUSSION

### ISSUE ONE

¶18    **Whether the District Court erred in determining the value of the marital estate.**

¶19    Lonnie argues the District Court abused its discretion in determining the value of the marital estate. Specifically, Lonnie asserts the District Court's findings lack substantial credible evidence supporting its valuation of the couple's real property and businesses.

¶20    Initially, Lonnie asserts the District Court erroneously included the commercial portion of the couple's residence in valuing the real property at $140,135. Lonnie contends the court's valuation including both the residential and commercial space was incorrectly based on an informal appraisal conducted by a private real estate broker and the value placed

5

on the property by the State of Montana for tax purposes, neither of which took into account the outstanding encumbrance of $44,050. He maintains the valuation should be placed at $100,000 based on the existing debt and the testimony of his expert who utilized a comparable sales approach in estimating the property's value. Further, Lonnie alleges the court incorrectly awarded half the value of the real property without consideration of the debt owing. Instead of awarding Gail the fair market value less the encumbrance, he argues the court unfairly burdened him with the outstanding debt while providing Gail an additional award of $20,000.

¶21 Lonnie next alleges the District Court erred in valuing Blue Bell at $8,114 and Frogfur at $30,419. Lonnie argues the court incorrectly based its findings on the testimony of Gail's expert, James Connors (Connors), who, Lonnie claims, is unqualified as an expert in valuing businesses. Lonnie also contends the court credited assets to Gail twice even though she liquidated inventory from the businesses to support herself after the petition for dissolution was filed. As such, Lonnie alleges Gail was allowed to liquidate marital property yet receive a benefit in the decree based on assets no longer in existence.

¶22 Gail first argues the District Court correctly determined the value of the real property. Gail asserts the testimony of her expert, Vern Gebhart (Gebhart), a real estate broker previously hired by Lonnie to assist in selling the property, established a high value of the entire property at $168,667. Gail also presented the testimony of Sharon Grant, manager of the Yellowstone County Department of Revenue, who placed a low total value of $129,070 on both the residential and commercial portions of the real property. Gail contends the

6

District Court did not abuse its discretion by averaging these two valuations and disregarding Lonnie's expert's appraisal, whose assessment was made for the purpose of enabling Lonnie to take out a loan after the dissolution.

¶23 Gail next argues the District Court did not err in reaching its valuation of the businesses. Gail contends her expert witness, Connors, made an accurate appraisal of the businesses utilizing an asset-based approach which provides a liquidation value of all assets and liabilities of the business to arrive at a proper valuation. Although Gail admits Connors had never valued a small business for purposes of a divorce, his testimony was based on a treatise published by the ABA Section of Family Law and consistent with standards applied by leading national experts in the field. Gail also contends the valuation of inventory and equipment for both businesses was made at the date of the parties' separation and includes all items sold at the garage sale.

¶24 We conclude the District Court did not err in determining the value of the marital estate. First, the court properly considered substantial credible evidence in valuing the real property. Indeed, both parties presented evidence at trial regarding the real property's value. Lonnie's expert estimated a value of $100,000 for the residential portion of the real property. Gail's experts, Gebhart and Grant, valued the real property, including both the residential and commercial portions, at $168,667 and $129,070 respectively. Adjusting Gebhart's valuation to the Laurel market and averaging it with the State's value, the District Court found the real property, including both the commercial and residential portions, yielded a value of approximately $140,135. Further, the District Court found Lonnie, acting in his individual

capacity, had encumbered the real property with a deed of trust in the amount of $44,050 and therefore was solely responsible for its repayment.

¶25 Second, the District Court also correctly considered substantial credible evidence in valuing the Blue Bell and Frogfur businesses. Again, the court was presented with testimony regarding the value of both businesses. Through videotape deposition, Gail submitted the testimony of Connors, an expert in the field of business valuation. Connors testified to three different methods used when valuing a business. Of the three methods, the District Court adopted the asset-based approach, which provides a liquidation value of all assets and liabilities of the business to arrive at a business valuation. The District Court reasoned the asset-based approach was the only accurate method to use when a business was no longer a going concern, as is the case here. Further, the District Court noted Lonnie did not introduce expert testimony regarding the proper valuation method nor did he have the business valued by an appraiser or other qualified individual. Finally, the court found the "garage sale" to which Lonnie alluded and objected to, was made as of the date of the parties' separation in 2002 and thus did not factor into the valuation for either business.

¶26 We have recognized district courts face a considerable task in determining property valuation. In the final analysis, it is not a question of whether we would be persuaded to reach a different conclusion after considering the same evidence. Rather, the test is whether the district court had adequate evidence to support its conclusions. *In re Marriage of Haines*, 2002 MT 182, ¶ 23, 311 Mont. 70, ¶ 23, 53 P.3d 378, ¶ 23. Therefore, we affirm the District Court's findings in regards to the valuation of the marital estate.

8

**ISSUE TWO**

¶27 **Whether the District Court erred in distributing the marital estate.**

¶28 Lonnie argues the District Court abused its discretion by attributing to him the full amount of the home mortgage and the Frogfur business. Lonnie asserts his share should not be burdened with the home mortgage because he used the loan proceeds to pay off Gail's credit card debts, make improvements on the commercial building and replace other items taken by Gail after she filed for dissolution. Further, Lonnie maintains the court erred in dividing the value of the real property while awarding him the value of Frogfur's inventory and equipment. Lonnie asserts since the court awarded him the value and possession of the inventory and equipment, he is also entitled to the value of the commercial building that currently houses those items.

¶29 Gail counters the District Court did not abuse its discretion in distributing the marital estate. Gail asserts the mortgage was procured after the parties separated and without her consent. Further, Gail contends Lonnie failed to produce any evidence at trial indicating the loan proceeds had been paid to a creditor, used for improvements or employed to replace household items. Finally, Gail maintains she contributed to the real property's purchase, maintenance and renovation during the party's marriage and therefore is entitled to an equitable portion.

¶30 The criteria for determination of the division of property is defined in § 40-4-202(1), MCA, which provides:

> (1) In a proceeding for a dissolution of a marriage . . . the court . . . shall . . . finally and equitably apportion between the parties the property and assets

9

belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making the apportionment, the court shall consider the duration of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each party . . . [T]he court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property . . . .

In applying the statute, the court enjoys wide discretion in equitably apportioning the marital estate. *In re Marriage of Dow* (1993), 261 Mont. 319, 323, 862 P.2d 1123, 1125. An equitable distribution does not require a 50/50 distribution of the marital estate. *In re Marriage of McNellis* (1994), 267 Mont. 492, 501, 885 P.2d 412, 418.

¶31 We conclude the District Court did not abuse its discretion in distributing the marital estate. The court properly considered testimony at trial Lonnie, acting in his individual capacity, encumbered the real property with a deed of trust to secure a loan from CitiFinancial, Inc., in the amount of $44,050. The court found Lonnie used $14,252 of the loan proceeds to pay off the existing mortgage on the real property and $2,048 was used to pay the costs of the loan. The remaining proceeds, $27,750, were used by Lonnie for personal expenses. The court presumably did not make additional findings as to the disposition of the remaining $27,750 because Lonnie did not produce receipts, invoices or other documents showing debt remittal, costs for improvements or replacement costs as he alleged.

¶32 Similarly, the District Court did not err in apportioning 55% of the marital estate to

Gail and 45% to Lonnie. First, the court found the terms of the August 8, 2002, property settlement agreement were unconscionable and unenforceable due to Gail's inability to aid in its preparation, Lonnie's failure to disclose the value of the Frogfur business and the inherent inequity its enforcement would procure. Next, the court made extensive findings regarding the health, education and economic position of both parties. The court found Gail contributed as a homemaker and caregiver for Lonnie's children and mother. Gail suffered from a medical condition which necessitated spending at least $100 a month on medication and had no medical insurance coverage. Further, Gail was unsuccessful in running the Blue Bell business herself after the separation, was unemployed and did not have a college degree. Finally, the court found Lonnie graduated from Western College of Auctioneering and received $1,200 a month in fixed income from a back injury he suffered in 1979 that adversely affected his writing abilities. As such, the court distributed the assets according to the duration of the marriage, the age of the parties, their health, education and training pursuant to § 40-4-202, MCA.

¶33    Therefore, we affirm the District Court as to its distribution of the marital estate.

¶34    Finally, Gail requests we award her attorney's fees pursuant to Rule 32, M.R.App.P., based upon Lonnie's appeal of the District Court's order "without substantial or reasonable grounds." As a general rule, this Court will not impose sanctions pursuant to Rule 32, M.R.App.P., unless the appeal is entirely unfounded and intended to cause delay or unless counsel's actions otherwise constitute an abuse of the judicial system. *In re Marriage of Moss*, 1999 MT 62, ¶ 41, 293 Mont. 500, ¶ 41, 977 P.2d 322, ¶ 41 (citations omitted).

11

¶35 In this case, we hold Lonnie's appeal was based on substantial and reasonable grounds, and was not intended to cause delay. Indeed, Lonnie elucidated several arguments why the District Court's valuation and division of property could have been modified or reversed. However, we are satisfied from the record and presentation of the appeal no reversible error occurred. Accordingly, we will not award Gail her attorney's fees and costs for having to respond to this appeal.

¶36 For the foregoing reasons, we affirm the District Court as to its property valuation and distribution of the marital estate and do not award Gail attorney's fees.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE