DA 06-0399

FILED

September 18 2007

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 237

ROBERT A. CLARK and LESLIE CLARK,

    Plaintiffs and Respondents,

    v.

HEIRS AND DEVISEES OF LARRY J. DWYER,
Deceased, DWYER FAMILY TRUST, and
GEORGE L. BYRUM and VIRGINIA BYRUM,

    Defendants and Appellants,

    and

NORTHWEST FARM CREDIT SERVICES, ACA,

    Defendant.

FILED

SEP 1 8 2007

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Madison, Cause No. DV-29-04-48,
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Lori A. Harshbarger, JD Law Firm, P.C., Tucson, Arizona (Dwyers)

        William P. Driscoll, Franz & Driscoll, PLLP, Helena, Montana (Byrums)

    For Respondents:

        Stephanie Gehres Kruer, Kruer Law Firm, P.C., Sheridan, Montana

Submitted on Briefs:  March 7, 2007

Decided:  September 18, 2007

Filed:

            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Appellants George and Virginia Byrum and the heirs and devisees of Larry Dwyer and the Dwyer Family Trust appeal from an order of the Fifth Judicial District Court, Madison County, granting a prescriptive easement to Robert and Leslie Clark. We affirm.

¶2    We consider the following issues on appeal:

¶3    1. Did the District Court err by entering findings of fact related to "public use" of the disputed portion of roadway?

¶4    2. Did the District Court err in declaring a private prescriptive roadway easement for "subdivision or residential access" to tracts created by subdivision in the 1960s?

¶5    3. Should the Clarks be awarded costs and damages for having to defend this appeal?

## BACKGROUND

¶6    The disputed roadway and prescriptive easement in question here is located in Section 33, Township 1 South, Range 5 West (Section 33) of Madison County. Section 33 is divided by the Burlington Northern Railroad that runs northeast and southwest across the land. The Jefferson River also divides Section 33, meandering through the northern half and southwest quadrant. Robert and Leslie Clark (the Clarks) are the present fee simple owners of real property located in Section 33 along the Jefferson River comprising of Parcel A, Tract A, Tract F, and Tract H as depicted by the Certificate of Survey filed for record on September 7, 2004, in Book 7 of Surveys, Page 1706-BA, of

2

the records of Madison County. The Clarks acquired this property over a seven-year period beginning in 1979.

¶7　In 1979, the Clarks entered a contract to purchase, including an option to purchase, land in the southwest quadrant of Section 33 from Edward and Vivian Judd (the Judds). From 1979 to 1986, the Clarks lived in the old Judd farmhouse. Pursuant to the contract to purchase, the Judds executed and delivered a warranty deed to the Clarks for a twenty-acre tract of the original Judd property known as Parcel A, for the purpose of building a house thereon. Parcel A is a triangular tract of land with its hypotenuse adjoining the western side of the railroad. The Clarks recorded the deed on September 11, 1986. Also in 1986, the Clarks assigned the right they held to purchase the remaining Judd property, including the original Judd farmhouse, to Donald and Charlene Shriver (the Shrivers). The Shrivers subsequently assigned the right to George and Virginia Byrum (the Byrums), who purchased the property.

¶8　Prior to assigning the right to purchase the Judd property to the Shrivers, the Clarks purchased the subdivided Tracts A, F, and H from Al and Joy Goodwin (the Goodwins) in 1984. These tracts were subdivided in the 1960s and the subdivision was recorded in the official records of Madison County on July 14, 1970. The Clarks recorded their deed to these tracts on November 21, 1989. Connected from east to west, respectively, Tracts A, F, and H are located in the northern half of Section 33 and attach to the northern boarder of Parcel A and run to the Jefferson River. The Clarks later built their current home on Tract A and have resided there since 1991. They did not build a home on Parcel A as originally planned.

¶9    Larry and Marlene Dwyer (the Dwyers) purchased certain real property in Section 33 and recorded a warranty deed on August 28, 1971. At the time the complaint was filed, the Dwyer land was owned in undivided one-half interests by the Dwyer Family Trust and the heirs and devisees of Mr. Dwyer. However, by a transfer recorded on September 27, 2004, John Joseph Dwyer became the owner of the Dwyer property.

¶10    The Dwyer property is a semi-triangular tract of land with the hypotenuse adjoining the eastern side of the railroad in Section 33. As such, the Dwyer property and Parcel A border each other with the railroad acting as a visible property line. The Dwyer property is bordered on the east by a county road named "Waterloo Road" and on the north by a roadway known as "Byrum Lane." Byrum Lane extends from Waterloo Road, across the Dwyer property, and across the northern border of the Clarks' Parcel A, which lies between the Dwyer and Byrum properties, before continuing onto the Byrums' property lying to the southwest of the Clarks' Parcel A. In essence, Byrum Lane dissects Parcel A from the Clarks' northern adjoining Tracts A, F, and H.

¶11    The Byrums utilize Byrum Lane by virtue of two recorded easements in their favor. The portion of Byrum Lane crossing the Clarks' Parcel A is a recorded sixty-foot wide roadway and utility easement. The portion of Byrum Lane traveling from Waterloo Road over the Dwyer property is a road and utility easement executed by Larry Dwyer on September 15, 1998, and recorded in favor of the Byrums on September 16, 1998. The recorded easement is described as

> [a] 30 foot wide roadway easement located in the N1/2SE1/4 of Section 33, Township 1 South, Range 5 West, P.M.M., said easement being 30 feet southerly of and parallel with the following described line: Beginning at the

4

East ¼ corner of said Section 33, thence S89°40'59"W 883.85 feet more or less on the east-west mid section line of said Section 33 to the southeasterly boundary line of the right of way of the Burlington Northern Railroad as said railway is located in and surveyed across the mid section line of said Section 33; said mid section line being the north boundary of the herein described easement.

This portion of Byrum Lane crosses the Dwyer property from Waterloo Road for a distance of approximately 834 feet before reaching the Clarks' property.

¶12   Historically, Byrum Lane was used by the Clarks and their predecessors to access what has been referred to as the "Judd" and "Goodwin" tracts which the Clarks purchased.  During the period of 1979 to 1986 when the Clarks lived in the old Judd farmhouse, Byrum Lane served as the Clarks' "sole access to [their] property" and residence.  From the period of 1986 to 1991 the Clarks used Byrum Lane to access their properties to feed livestock, load hay, and move equipment, and in 1988 the Clarks began constructing their home on Tract A, taking up residence there in 1991.  Since then they have continuously used Byrum Lane to access Parcel A and Tracts A, F, and H, although they also have access to their house by way of a roadway from Waterloo Road.  As such, the Clarks claim a prescriptive easement along the portion of Byrum Lane legally described above, allowing them access over the Dwyer property to their Parcel A and Tracts A, F, and H.  Accordingly, the Clarks filed an action seeking declaration of a private prescriptive right-of-way easement on the recorded access easement owned by the Byrums and crossing the Dwyer property.

¶13   Following a two-day bench trial, the District Court entered findings of fact that included:

18. The disputed road in question has been used by the public and Clarks' predecessors in interest since, at least, the early 1900s, and has served several residences since that time.

19. The county road department has maintained the road on occasion.

20. That the disputed road was generally knows [sic] as a public road and no permission was asked for or granted to use the road.

21. That the public had a right to use the road and used the road long before defendants Dwyers purchased the property.

22. During the time defendants Dwyers has [sic] owned the property surrounding the disputed road, the public, including plaintiffs, did not seek defendants Dwyers' permission to use the road, and defendants Dwyers' contention that said use was permissive is unsupported by the record. Dwyers never formally gave anyone permission to use the roads.

23. Plaintiffs, the public, and their predecessors in interest have used the road for access to their property located in Section 33. The past use of the road has included access for: A. Livestock purposes; B. Irrigation purposes; C. Hauling livestock supplies; D. Farming purposes; E. Residential purposes; F. Subdivision purposes; G. Repairing fence; H. Cutting and hauling firewood; I. Spraying weeds; J. Movement of equipment; K. Hunting; L. Fishing/river access; M. Burning brush; N. Fire control; O. Private roadway crossing at railroad tracks.

. . . .

23. [sic] That defendants Dwyers failed to establish any persuasive evidence that the use of the road was permissive.

24. All owners of the road were put on notice in the 1960s that the road was intended to service residences when the subdivision of the property into various tracts took place.

. . . .

33. While defendant Dwyer has concerns about additional burdens on the easement, there is no evidence that there is any additional burden planned or that additional subdivisions of the property, beyond that done in the 1960s, is going to take place. The property was subdivided and of record

6

prior to defendants Dwyers' purchase of the property. They can not [sic] now claim surprise.

¶14 The court concluded as a matter of law that the Clarks established the elements of a prescriptive easement, to wit: open, notorious, exclusive, adverse, continuous, and uninterrupted use of the roadway for at least five years. The District Court issued judgment granting the Clarks a prescriptive easement of the portion of Byrum Lane crossing the Dwyer property. The judgment determined the scope of the prescriptive easement as including residential, agricultural and recreational uses. The court also held that the easement extended to and ran with all subdivided parcels of land owned by the Clarks—specifically Parcel A, Tract A, Tract F, and Tract H.

¶15 The Dwyers and Byrums submitted post-judgment motions pursuant to M. R. Civ. P. 59(g) and 52(a) seeking to: (1) set aside the District Court's "public use" findings of fact; and (2) alter or amend the findings of fact, conclusions of law, and judgment entered by the court insofar as they provide for subdivision or residential access to tracts owned by the Clarks that have never had residences. The District Court denied the motions. The Dwyers and the Byrums appeal.

## STANDARD OF REVIEW

¶16 A district court's findings of fact are reviewed to determine whether they are clearly erroneous. *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 20, 329 Mont. 129, ¶ 20, 122 P.3d 1220, ¶ 20. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court has misapprehended the effect of evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been

committed. *Leichtfuss*, ¶ 20. A district court's conclusions of law are reviewed to determine whether they are correct. *Leichtfuss*, ¶ 21.

## DISCUSSION

**¶17   1. Did the District Court err by entering findings of fact related to "public use" of the disputed roadway?**

¶18   The Byrums and Dwyers argue the District Court's "public use" findings of fact are irrelevant and immaterial to this proceeding, pursuant to M. R. Evid. 401 and 402, and should be set aside. The Byrums and Dwyers contend that this is not a public easement case, and furthermore, the District Court refused to let the Clarks amend their pleadings at trial to make a public easement claim. Moreover, the Byrums and Dwyers assert that there is nothing in the District Court's conclusions of law explaining or justifying the "public use" findings. The Byrums and Dwyers do not allege any harm or prejudice, but nevertheless they request that this Court set aside any and all findings of fact by the District Court that use the word "public" or "public use."

¶19   The Clarks respond that the District Court's limited inclusion of findings of fact pertaining to public use of the roadway is supported by substantial clear and convincing evidence and is relevant to the historical use of the roadway.

¶20   The District Court included the following six findings of fact in its order relevant to this issue:

> 18.   The disputed road in question has been used by the public and Clarks' predecessors in interest since, at least, the early 1900s . . . .

> 19. The county road department has maintained the road on occasion.

20. That the disputed road was generally knows [sic] as a public road and no permission was asked for or granted to use the road.

21. That the public had a right to use the road and used the road long before defendants Dwyers purchased the property.

22. During the time defendants Dwyers has [sic] owned the property surrounding the disputed road, the public, including plaintiffs, did not seek defendants Dwyers' permission to use the road, and defendants Dwyers' contention that said use was permissive is unsupported by the record.

. . . .

23. Plaintiffs, the public, and their predecessors in interest have used the road for access to their property located in Section 33.

¶21 The District Court did not address public access in its conclusions of law and judgment, and we conclude there was no harm in referencing evidence of historic public use of the road over which the private easement was at issue. While reflecting evidence offered in the trial, the public use findings served only to give credibility to the Clarks' private claim and had no other legal effect. Thus, we hold that the District Court did not err by entering findings of fact related to public use.

¶22 **2. Did the District Court err in declaring a private prescriptive roadway easement for "subdivision or residential access" to tracts created by subdivision in the 1960s?**

¶23 The Byrums and Dwyers argue that the District Court's order should be reversed insofar as it provides for subdivision or residential access to tracts owned by the Clarks that never have had residences. The Byrums and Dwyers contend it is undisputed that the subdivided tracts have never contained residences, with the exception of Tract A where the Clarks have resided since 1991, and the District Court's findings of fact and

conclusions of law "should be reversed insofar as they provide for subdivision or residential access to tracts owned by the Clarks that have never had residences on them."

¶24 The Clarks respond that substantial clear and convincing evidence was admitted at trial to support the District Court's order and judgment allowing the Clarks to use the roadway for subdivision and residential purposes as they have been since 1979 when they lived in the old Judd farmhouse. The Clarks assert that the residential use made of Byrum Lane by them, their predecessors and successors, begins at and is physically connected to the 884-foot section of roadway at issue in this case, and that the Court cannot ignore the prior subdivision of the property or the road's historical use for residential purposes.

¶25 To establish a private prescriptive easement, a party must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period of five years. *Swandal Ranch Co. v. Hunt*, 276 Mont. 229, 233, 915 P.2d 840, 843 (1996); § 70-19-404, MCA. An open and notorious use is "'a distinct and positive assertion of a right [that is] hostile to the rights of the owner and brought to the attention of the owner.'" *Brumit v. Lewis*, 2002 MT 346, ¶ 15, 313 Mont. 332, ¶ 15, 61 P.3d 138, ¶ 15 (quoting *Amerimont, Inc. v. Gannett*, 278 Mont. 314, 323, 924 P.2d 1326, 1333 (1996)). "As a general rule, an easement appurtenant attaches to, passes with, and is incident of ownership of the particular land to which it is appurtenant." *Leichtfuss,* ¶ 37. "[S]uch an easement 'runs with the land,' which means that the benefit or burden passes automatically to successors." *Leichtfuss,* ¶ 37.

10

¶26 Once established, the owners of a prescriptive easement are limited to the use and frequency of use that was established during the prescriptive period. *Kelly v. Wallace*, 1998 MT 307, ¶ 31, 292 Mont. 129, ¶ 31, 972 P.2d 1117, ¶ 31. "It is settled law in Montana that in acquiring a prescriptive easement, 'the right of the owner of the dominant estate is governed by the character and extent of the use during the period requisite to acquire it.'" *Warnack v. Coneen Family Trust*, 266 Mont. 203, 217-18, 879 P.2d 615, 724 (1994) (quoting *Marta v. Smith*, 191 Mont. 179, 183, 622 P.2d 1011, 1013 (1981)).

¶27 Section 70-17-106, MCA, provides that: "[t]he extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired." If the easement is not specifically defined, "'it need only be such as is reasonably necessary and convenient for the purpose for which it was created.'" *Leffingwell Ranch, Inc. v. Cieri*, 276 Mont. 421, 430, 916 P.2d 751, 757 (1996) (quoting *Strahan v. Bush*, 237 Mont. 265, 268, 773 P.2d 718, 720 (1989)).

¶28 The District Court determined that the elements of a prescriptive easement were established by clear and convincing evidence, and that is not an issue on appeal. With regard to "the nature and scope of uses falling within the established prescriptive easement," the court determined that the "evidence is uncontroverted that the subdivision of Plaintiffs' land establishing parcels labeled Tract A, Tract F, and Tract H took place in the mid-1960's" and that "[s]uch subdivision demonstrates development intended for these tracts." It notes that the Dwyers knew the property was subdivided and that the road was used to service those tracts prior to their purchase of the property. The District

11

Court determined that the roadway historically has been used for residential and agricultural access, not only to the Clarks' property, but also to the former Judd, Goodwin, and Walks tracts adjacent to the easement, and that the testimony established that no additional subdivision was planned. The court concluded that "during the 5-year statutory period, the scope of the use of the roadway includes residential use and that the roadway has been used for residential purposes benefiting the Clarks' property."

¶29 The Byrums and Dwyers rely on *Leffingwell* for their arguments against subdivision access. In *Leffingwell*, a subdivider sought to use an old ranch access road for subdivision access. The district court held that the access provided by easements granted over the road for ranch access was limited to the agricultural use intended when the easements were created by deeds, and an expansion of use "would constitute an overburdening" of the easements. *Leffingwell*, 276 Mont. at 430, 916 P.2d at 756. We agreed and further noted that the evidence, which included gates on the road, "did not contemplate substantial traffic or intend that the easements could be enlarged." *Leffingwell*, 276 Mont. at 431, 916 P.2d at 757. We held that "'[n]o use may be made of the right-of-way different from the use established at the time of the creation of the easement so as to burden the servient estate to a greater extent than was contemplated at the time the easement was created.'" *Leffingwell*, 276 Mont. at 431, 916 P.2d at 757 (quoting *Lindley v. Maggert*, 198 Mont. 197, 199, 645 P.2d 430, 432 (1982)).

¶30 Here, at the time the prescriptive easement was created by the Clarks' use, the Clarks owned all of their tracts of land and accessed them by way of the road. Because the easement attaches to the dominant tenement, which includes the Clarks' property

12

acquired from the Judds in 1979 and from the Goodwins in 1984, the easement is attached to each of the parcels. Prior to the time the prescriptive easement came into being, these parcels were subdivided, which the District Court concluded had put all owners on notice that the road was intended to service residences. The Dwyers and Byrums argue that this finding is undercut by the fact that the Clarks had alternative access to their properties, but we cannot disagree with the District Court that the subdivision of the land into parcels made the residential purpose of the road more obvious. Further, the Clarks lived in a residence on the old Judd property and used Byrum Lane for eight years to access their home, the old Judd farmhouse, before later building a residence on Tract A. Mrs. Judd testified, in reference to the Judds' old property (now comprising the Clarks' Parcel A and the Byrum property), that "[the road has] been used for a hundred years" to access "[a]ll those properties." Unlike *Leffingwell*, approving a residential purpose of this easement would not expand its original purpose. The road in question has historically been used to service Tracts A, F, and H, as well as the Byrums' property, since the 1960s. Further, the Clarks testified during trial that they had no plans to further subdivide the land. In allowing for "subdivision" access to these tracts of land, the court did not expand the scope of the prescriptive easement beyond what was contemplated at the time of its creation.

¶31    Therefore, the right to use the easement for subdivision or residential access extends to each parcel in question and runs with the land. We conclude that the District Court did not err in determining the scope of the prescriptive easement herein.

13

¶32 **3. Should the Clarks be awarded costs and damages for having to defend this appeal?**

¶33 The Clarks argue that they are entitled to recover their costs on appeal pursuant to M. R. App. P. 33, and to recover damages for this appeal pursuant to M. R. App. P. 32, since the appeal was taken without substantial or reasonable grounds and is without merit.

¶34 "As a general rule, this Court will not impose sanctions pursuant to Rule 32, M.R.App.P., unless the appeal is entirely unfounded and intended to cause delay or unless counsel's actions otherwise constitute an abuse of the judicial system." *Collins v. Collins*, 2004 MT 365, ¶ 34, 324 Mont. 500, ¶ 34, 104 P.3d 1059, ¶ 34.

¶35 In this case, we hold the appeal was based on substantial and reasonable grounds and not intended to cause delay. Accordingly, we decline to award the Clarks attorney fees and costs for responding to this appeal.

¶36 Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

14