DA 06-0743

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 139

CHRISTY R. KNUTSON, and JUDY CANDEE, Co-Personal
Representatives of the Estate of Jesse B. Roberts, and
CHRISTY R. KNUTSON and WAYNE G. KNUTSON, Individuals,

        Plaintiffs and Appellees,

    v.

VERNON O. SCHROEDER and
CHARLOTTE J. SCHROEDER, et al.,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DV 05-64
Honorable Katherine Irigoin, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            Richard W. Heineman, Attorney at Law, Wibaux, Montana

        For Appellees:

            Kim T. Christopherson, Kaufman, Vidal, Hileman & Ramlow, P.C.,
Kalispell, Montana

Submitted on Briefs:  February 27, 2008

Decided:  April 22, 2008

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Vernon and Charlotte Schroeder (Schroeders) appeal from an order of the Seventh Judicial District, Richland County, arising from the action to quiet title brought by Christy R. Knutson and Judy Candee, personal representatives of the estate of Jesse Roberts, and Christy R. Knutson and Wayne G. Knutson as individuals (Knutsons).  We affirm.

¶2    The Schroeders present the following issues for review:

¶3    Whether the District Court properly determined that both property owners held fee simple title to one-half of a 30-foot wide former public roadway.

¶4    Whether the District Court properly determined that each party's use of the other's property had created in the Schroeders a revocable license to access an irrigation ditch on the Knutsons' property, but had created in the Knutsons a prescriptive easement to use the Schroeders' portion of the right-of-way.

### FACTUAL AND PROCEDURAL BACKGROUND

¶5    The parties own property in Crane, Montana, in Richland County.  The Knutsons' land is situated directly north of the Schroeders' land.  Marshall Street, a right-of-way planned for the original town of Crane, divides the two properties.  Crane came into existence in 1910 when John A. Stewart (Stewart) donated the townsite property to the public in a certificate of dedication.  Stewart also owned all the land adjoining the townsite. Consequently, Stewart originally owned the land now owned by the Schroeders within the Crane townsite and the Knutsons' land just outside the Crane townsite.

¶6    The Richland County Commissioners abandoned the northern 50 feet of Marshall Street in 1917 upon Stewart's petition.  The County expressly reserved to the public use the

2

right-of-way's remaining 30 feet. Stewart later sold the land north of Marshall Street to James M. Roberts in 1918, including the northern 50 feet of the original 80-foot wide right-of-way. The Richland County Commissioners abandoned the right-of-way's remaining 30 feet in 1919 upon a second petition filed by Stewart.

¶7     The Schroeders, in 1991, acquired the property that abuts the 30-foot right-of-way to the south. The property abutting the right-of-way to the north has remained in the Roberts family. The Knutsons are the personal representatives of the estate of Jesse B. Roberts (Jesse). The Schroeders claim that in 1991 Jesse orally agreed to allow the Schroeders to use any part of his land to transport water from Jesse's irrigation ditch to the Schroeders' property and to maintain the irrigation ditch. The Schroeders allege that, in return, they allowed Jesse to use a roadway on the northwestern part of their property to drive around his house. The Knutsons have denied the Schroeders access, however, since April 2004.

¶8     Several significant events happened around the time of Jesse's death in 2004. The record does not establish conclusively whether these events took place shortly before, or shortly after, Jesse died. The Knutsons removed an encroaching building from the edge of the Schroeders' property at the request of the Schroeders' attorney. The parties also met to discuss their respective rights to use the other's land around the time of Jesse's death. The Knutsons offered to purchase the roadway on the northwestern portion of the Schroeders' property. The Knutsons also requested an express easement allowing them to continue to use the roadway on the northwestern part of the Schroeders' property to drive around Jesse's house. The Knutsons promised in return to grant orally to the Schroeders access to irrigation

3

waters on the Knutsons' land. The Knutsons refused to negotiate further when the Schroeders requested an express easement.

¶9      The Knutsons brought this action to quiet title to the northern 65 feet of the original 80-foot wide Marshall Street and to the disputed roadway giving them access to Jesse's house. The Schroeders alleged in a counterclaim that the Knutsons unlawfully continued to deprive the Schroeders of their use of an existing easement, or, in the alternative, a prescriptive easement, to access irrigation waters on the Knutsons' land. The District Court granted partial summary judgment on several issues. The District Court decided that the Schroeders' irrigation water access would constitute a revocable license if the Schroeders failed to establish an easement at trial. The District Court also determined that if the Schroeders established a prescriptive easement for the irrigation ditch at trial their subsequent actions incompatible with a prescriptive right had extinguished the servitude.

¶10     The Schroeders admitted during the bench trial that they had observed the Knutsons using the disputed roadway daily. The Schroeders also admitted that they had purchased their land with notice that the Knutsons used the disputed roadway on a daily basis. Testimony regarding the ditch showed that the ditch had not existed before Stewart had severed the unity of title to what is now the Knutsons' and Schroeders' property. The Schroeders failed to prove that they had ever expended any money on the ditch.

¶11     The District Court ruled in favor of the Knutsons. The court decided that Stewart, the Schroeders' predecessor in interest to the land south of Marshall Street, took fee simple title to the southern half of the remaining 30 feet of Marshall Street upon abandonment in 1919, pursuant to § 4530, R.C.M. (1907). Section 4530, R.C.M. (1907), now codified at § 70-16-

4

202, MCA, provides that "[a]n owner of land bounded by a road or street is presumed to own to the center thereof . . . ."

¶12    Stewart originally owned both the properties to the north and to the south of Marshall Street. The parties agreed at trial that Stewart had acquired the northern 50 feet of Marshall Street when the County expressly abandoned it to him by resolution in 1917. The parties further agreed that Stewart had conveyed that 50-foot wide portion of Marshall Street to Roberts, the Knutsons' predecessor in interest, when Stewart deeded to him the land bordering the right-of-way to the north in 1918. As a result, Knutson now owned the entire 50-foot strip. The District Court determined that no contrary intent existed in the deed from Stewart to Roberts indicating that Stewart intended to convey anything more or less than that provided by § 4530, R.C.M. (1907).

¶13    The District Court also considered § 4626, R.C.M. (1907), now codified at § 70-20-307, MCA, that provides that "[a] transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front of the center thereof, unless a different intent appears from the grant." The court concluded, therefore, that upon the 1919 abandonment of the remaining 30 feet of Marshall Street, the adjoining landowners to the north and south had acquired a fee simple interest in the right-of-way to the centerline. Each landowner had acquired 15 feet. The successors in interest of these landowners – the Knutsons and the Schroeders – now owned their respective 15-foot strips of Marshall Street after the 1919 abandonment.

¶14    The District Court also decided that the Knutsons had failed to establish an express easement over the disputed roadway, but that they had established a prescriptive easement

5

over the roadway by their 17 years of open and notorious, exclusive, adverse, continuous, and uninterrupted use of the roadway to drive around Jesse's house. The District Court concluded that the Schroeders had failed to demonstrate the existence of an easement over the Knutson's land for irrigation purposes. The Schroeders could at best have enjoyed a revocable license given the court's previous partial summary judgment. The Schroeders appeal.

## STANDARD OF REVIEW

¶15 We review the findings of fact made by a district court sitting without a jury to determine if the court's findings were clearly erroneous. *City of Bozeman v. Taylen*, 2007 MT 256, ¶ 15, 339 Mont. 274, ¶ 15, 170 P.3d 939, ¶ 15. A district court's findings of fact are clearly erroneous if substantial credible evidence does not support them, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Taylen*, ¶ 15. We must view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *Taylen*, ¶ 15.

## DISCUSSION

¶16 *Whether the District Court properly determined that both property owners held fee simple title to one-half of a 30-foot wide former public roadway.*

¶17 The Schroeders contend that the District Court incorrectly applied § 4530, R.C.M. (1907). The Schroeders cite *City of Billings v. Pierce*, 117 Mont. 255, 262, 161 P.2d 636,

639 (1945), for the proposition that a public road constitutes an easement vested in the public. The Schroeders contend that ensuing cases interpreting public roadways, including *McPherson v. Monegan*, 120 Mont. 454, 187 P.2d 542 (1947), *Bailey v. Ravalli County*, 201 Mont. 138, 653 P.2d 139 (1982), and *Herreid v. Hauck*, 254 Mont. 496, 839 P.2d 571 (1992), have held that a landowner whose property adjoins a public roadway acquires a vested interest in one-half of the public roadway at the time the road is platted pursuant to the principle established in *Pierce*.

¶18    The Schroeders concede that the 1917 abandonment of the northern 50 feet and the express conveyance of those 50 feet from Stewart to Roberts reduced their interest in the roadway. The Schroeders argue, however, that, as owners of the property abutting Marshall Street to the south, they acquired a vested fee simple interest in one-half of the 80-foot wide road way at the time of platting according to *McPherson*, *Bailey*, and *Herreid*. The Schroeders claim that the District Court should have applied § 4530, R.C.M. (1907), to the entire original 80-foot wide roadway. The Schroeders contend that the effect of the 1917 abandonment and subsequent conveyance entitles them to the remaining 30 feet of roadway where they originally had been entitled to 40 feet.

¶19    We agree that "the street belongs as an appurtenance, to the contiguous property, and that the title to the latter carries with it a title to the former." *McPherson*, 120 Mont. at 458, 187 P.2d at 544; *see also Bailey*, 201 Mont. 138, 653 P.2d 139; *Herreid*, 254 Mont. 496, 839 P.2d 571. Contrary to the Schroeders' assertions, however, *McPherson*, *Herreid*, and *Bailey* do not hold that a landowner acquires an interest in one-half of a roadway as originally platted regardless of earlier abandonments or conveyances affecting that roadway. The

7

Schroeders cite no other authority that suggests that such an interest cannot be extinguished or modified by an earlier abandonment or conveyance. To the contrary, this Court long has recognized that "'[a] highway which is lawfully vacated or abandoned ceases to be a highway and, insofar as the public has a mere easement of way, the title reverts to the owners of the fee discharged from the servitude.'" *Herreid*, 254 Mont. at 499, 839 P.2d at 573 (quoting *Bailey*, 201 Mont. at 146, 653 P.2d at 143).

¶20 The Schroeders urge us to apply § 4530, R.C.M. (1907), to a roadway that no longer existed at the time that the Schroeders allege that they should have acquired the southern 30 feet by abandonment. The 80-foot wide public roadway ceased to exist in 1917 when the County abandoned the northern 50 feet to Stewart, as the Schroeders have conceded at trial and on appeal. The title to that 50-foot portion of road reverted to Stewart in fee simple, discharging him from the public's easement. *Herreid*, 254 Mont. at 499, 839 P.2d at 573 (quoting *Bailey*, 201 Mont. at 146, 653 P.2d at 143). Marshall Street consisted of a 30-foot wide public roadway in 1919 when the Richland County Commissioners abandoned the remaining roadway to Roberts in the north and to Stewart in the south.

¶21 The District Court correctly applied § 4530, R.C.M. (1907), to the 30-foot wide public roadway as it existed in 1919. The District Court correctly concluded that the landowners adjoining Marshall Street each gained title to one-half of that 30-foot roadway upon the 1919 abandonment. The Knutsons own the northern 65 feet of the former Marshall Street, while the Schroeders own the southern 15 feet.

¶22 *Whether the District Court properly determined that each party's use of the other's property had created in the Schroeders a revocable license to access an irrigation ditch on*

8

*the Knutsons' property, but had created in the Knutsons a prescriptive easement to use the Schroeders' portion of the right-of-way.*

¶23 The Schroeders claim that the District Court erred when it determined that the Knutsons had acquired a prescriptive easement across the Schroeders' land to drive around Jesse's house. The Schroeders assert several bases for this claim. The Schroeders first claim that substantial credible evidence did not support the basic elements of a prescriptive easement. A party seeking to establish a prescriptive easement must show open, notorious, exclusive, adverse, continuous and uninterrupted use for the five-year statutory period by clear and convincing evidence. *Brimstone Min., Inc. v. Glaus*, 2003 MT 236, ¶ 21, 317 Mont. 236, ¶ 21, 77 P.3d 175, ¶ 21. The Schroeders contend that Knutsons did not use the property in an adverse manner because the Knutsons claim that the Schroeders consented to Jesse's use of their property and that Jesse and the Schroeders had agreed to an exchange of easements in 1991.

¶24 The District Court did not consider the alleged exchange of easements between Jesse and the Schroeders in 1991 in rendering its decision. The Knutsons argue that the District Court excluded this evidence because no substantial credible evidence existed to support that the meeting had ever taken place. The Knutsons point out that the Schroeders provided inconsistent testimony throughout the proceeding regarding when they had negotiated their agreement with Jesse, and whether such an agreement had been arranged at all. The Knutsons further note that Jesse's heirs testified that they had never heard of the arrangement. The District Court relied upon this evidence to conclude that the Knutsons used the disputed property in an adverse manner, rather than with the Schroeders'

9

permission. When viewing this evidence in the light most favorable to the Knutsons, we agree that the District Court based its conclusion that the Knutsons demonstrated hostile use of the Schroeders' land upon clear and convincing, and substantial credible evidence. *Brimstone Min. Inc.*, ¶ 21; *Taylen*, ¶ 15. The District Court's conclusion does not constitute clear error. *Taylen*, ¶ 15.

¶25 The Schroeders also assert that the Knutsons acted in a manner incompatible with a claim for a prescriptive easement pursuant to § 71-17-111(3), MCA. The Schroeders claim that the Knutsons acted incompatibly with their prescriptive easement claim when they tore down an encroaching building in the disputed area at the request of the Schroeders' attorney. The Schroeders further allege that the Knutsons acted incompatibly when they attempted to purchase the property over which they claimed a prescriptive easement. The Schroeders finally contend that the Knutsons acted incompatibly when they attempted to negotiate an exchange of easements with the Schroeders after Jesse died.

¶26 The District Court made specific findings regarding whether the Knutsons acted in a manner incompatible with a claim for a prescriptive easement. Section 70-17-111(1)(c), MCA, provides that a servitude is extinguished "by the performance of any act upon either tenement by the owner of the servitude or with the owner's assent that is incompatible with its nature or exercise." The District Court determined that the Knutsons' tearing down of an encroaching building in the disputed area, the attempted purchase of the easement, and the attempt to negotiate the purchase of an easement did not constitute acts incompatible with the prescriptive easement.

10

¶27 The District Court noted that all of those events occurred either shortly before, or shortly after, Jesse's death – the evidence did not establish clearly the exact timing. The District Court determined that, regardless of the timing, those acts on the part of the Knutsons could not have demonstrated their intent to abandon the prescriptive easement because the Knutsons were not authorized to act either on Jesse's behalf or on behalf of Jesse's estate. The evidence established that the Knutsons were not Jesse's agents before his death. The evidence also established that the Knutsons were not yet appointed personal representatives of Jesse's estate during the period shortly after Jesse's death. Once again, when viewing this evidence in the light most favorable to the Knutsons, we agree that the District Court based its conclusion that the Knutsons did not act in a manner incompatible with their prescriptive easement upon substantial credible evidence. The District Court's conclusion did not constitute clear error. *Taylen*, ¶ 15.

¶28 The Schroeders finally argue that their 1991 agreement with Jesse regarding his use of the Schroeders' property and the Schroeders' use of Jesse's property constituted an exchange of easements supported by consideration. The Schroeders contend that this exchange converted what had been a revocable license to an enforceable easement to use the Knutsons' property for irrigation purposes. We have determined above that the District Court properly refused to consider the Schroeders' claim of the existence of a 1991 agreement between Jesse and the Schroeders based on the Schroeders' inconsistent testimony on that issue. The Schroeders have not demonstrated on appeal why the District Court's refusal to consider this alleged agreement constituted clear error. *Taylen*, ¶ 15.

¶29 We affirm.

11

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER