FILED

August 25 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0296

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 280

SCOTT W. SCHMID and CINDY L. SCHMID,

      Plaintiffs and Appellants,

  v.

JOSEF W. PASTOR, PATTI E. PASTOR, MONICA
PASTOR, LYNN THURLOW and TRACY HOLST,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 05-488B
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            Randall A. Snyder; Snyder Law Office, P.C.; Bigfork, Montana

        For Appellees:

            Kimberly S. More; Crowley, Haughey, Hanson, Toole & Dietrich,
P.L.L.P.; Kalispell, Montana

Submitted on Briefs:  March 18, 2009

Decided:  August 25, 2009

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1   Scott and Cindy Schmid ("Schmids") appeal the order of the Eleventh Judicial District Court, Flathead County, Montana, granting a prescriptive easement in favor of Joseph, Patti, and Monica Pastor ("Pastors"), Lynn Thurlow, and Tracy Holst. We affirm in part and reverse in part.

¶2   We consider the following issues on appeal:

¶3   1.  Did the District Court err in granting a prescriptive easement to Lot 14 for year-round residential and recreational use?

¶4   2.  Did the District Court err in granting a prescriptive easement to Lots 15 and 16 for year-round residential and recreational use?

## BACKGROUND

¶5   The parties all own lots in the Brittells Point of Pines Subdivision on Whitefish Lake in Flathead County. Schmids own Lots 11 thru 13; Thurlow and Holst own Lot 14; Thurlow, Holst, and the Pastors own Lot 15; and the Pastors own a portion of Lot 16. When Pastors, Thurlow, and Holst ("PTH") began developing their respective properties in Brittells Point, the Schmids brought an action for quiet title over a road that traverses Lots 8 to 16 ("the Road"). PTH counterclaimed, contending they held a prescriptive easement in the Road, which, historically, provided the only access to Lots 14, 15, and 16.

¶6   Both parties submitted summary judgment motions. The District Court granted PTH partial summary judgment, concluding a prescriptive easement existed over the Road for the benefit of Lot 14. However, concluding that there were genuine issues of

2

material fact, the court reserved judgment on the scope of the easement for Lot 14, as well as whether a prescriptive easement existed for the benefit of Lots 15 and 16. These issues proceeded to a non-jury trial.

¶7 The Brittells Point of Pines Subdivision was filed in 1938, and consists of Lots 1 through 35. Although the lots have legal access to East Lakeshore Drive, the steep terrain makes access to that road difficult. Mary Jane Street was the sole witness regarding the historical use of the subject Road. She and her husband purchased Lots 14, 15, and 16 in 1945. Shortly thereafter, they constructed the Road, which became the sole practical means of accessing their property. The record indicates that the Road can only sustain single lane traffic and at places is no more than eleven feet wide. The Road is bordered by a steep bank and by Schmids' current residence, and is not amenable to further widening. Within a couple years of building the Road, the Streets moved a cabin onto Lot 14, where it is still located. The cabin is equipped with indoor plumbing and was found by the District Court to be inhabitable year-round. The Streets used Lots 15 and 16 for parking, camping, fishing, and social gatherings. From 1997 until 2003, Mrs. Street lived in the cabin for much of the year.

¶8 The Pastors purchased the Streets' property in 2003, and sold Lots 14 and 15 to Thurlow and Holst in 2005. The cabin on Lot 14 has not been occupied permanently since Mrs. Street sold the property in 2003. The Schmids purchased Lots 10, 11, and 12 in 2004 and Lot 13 in 2006. Since approximately 2004, the Schmids and the previous owners of Lot 13 have plowed snow to a berm at the end of Lot 13, effectively blocking any traffic beyond that point.

3

¶9 At the conclusion of trial, the court determined a year-round easement existed for Lots 14, 15, and 16 for recreational and residential use. Schmids appeal.

## STANDARD OF REVIEW

¶10 We review a trial court's conclusion of law for correctness. *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 21, 329 Mont. 129, 122 P.3d 1220. We review a trial court's findings of fact to determine whether substantial credible evidence supports them, the court misapprehended the effect of the evidence, or we are left with a definite conviction that a mistake has been committed. *Knutson v. Schroeder*, 2008 MT 139, ¶ 15, 343 Mont. 81, 183 P.3d 881. We perform this review by looking at the evidence in a light most favorable to the prevailing party. *Knutson*, ¶ 15. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion; it may be less than a preponderance of the evidence, but must be more than a "mere scintilla." *Fish v. Harris*, 2008 MT 302, ¶ 8, 345 Mont. 527, 192 P.3d 238 (citation omitted).

## DISCUSSION

¶11 The proponent of a prescriptive easement must show open, notorious, exclusive, adverse, continuous, and uninterrupted use over the five-year statutory period by clear and convincing evidence. *Knutson*, ¶ 23. A prescriptive easement is constrained by the nature of its use when the easement was acquired. Section 70-17-106, MCA; *see also Leichtfuss*, ¶ 30; *Clark v. Heirs and Devisees of Dwyer*, 2007 MT 237, ¶ 26, 339 Mont. 197, 170 P.3d 927. "[N]o use may be made of the right-of-way different from the use established at the time of the creation of the easement so as to burden the servient estate to a greater extent than was contemplated at the time the easement was created." *Lindley*

4

*v. Maggert*, 198 Mont. 197, 199, 645 P.2d 430, 432 (1982). The frequency of use by which owners of a prescriptive easement acquired their easement during the prescriptive period may limit the frequency of future use pursuant to § 70-17-106, MCA. *Kelly v. Wallace*, 1998 MT 307, ¶ 34, 292 Mont. 129, 972 P.2d 1117.

¶12 **1. Did the District Court err in concluding a prescriptive easement existed to Lot 14 for year-round residential and recreational use?**

¶13 The Schmids argue the District Court erred when it found that Lot 14 was used continuously for residential purposes, because the lot was actually used only "part time." Schmids thus contend that the District Court erred in determining the scope of prescriptive road easement declared in favor of Lot 14, as the easement should not have included year-round, residential use.

¶14 In response, PTH directs our attention to portions of Mrs. Street's testimony, which they argue supports the District Court's conclusion that she lived on Lot 14 full-time:

> Q. Approximately what months would you occupy the cabin from year to year?
>
> A. Oh, April to October, and I lived there permanently from '97 until 2000 – until '02 – I don't have my glasses on – with some months in Arizona.
>
> .  .  .
>
> Q. Please describe the number of occasions you visited the cabin to check on it in the winter.
>
> A. Monthly.
>
> Q. When you checked on your cabin in the winter what all would you do?
>
> A. We checked the roof and checked the house, shoveled the roof.

. . .

> Q. Did you live full-time at the Whitefish Lake property, Lots 14, 15, and 16 of Brittles Point of Pine Subdivision generally through May through September for more than a five-year period during the time you owned the property?
>
> A. From 1997 to sale to Pastors.

Schmids reply that living in the cabin on Lot 14 from April to October of each year is not "full-time," and that the above-quoted testimony constitutes the entirety of PTH's case in support of a year-round residential easement. They contend their burden as the servient tenement will increase inappropriately if PTH is allowed to use the Road for year-round access to the property.

¶15 Mrs. Street testified that she stayed at the cabin each year from "April to October, and I lived there permanently from '97 . . . until '02." The testimony of one witness is sufficient to prove a fact. *State v. Merrick*, 2000 MT 124, ¶ 13, 299 Mont. 472, 2 P. 3d 242. The District Court was in the best position to view the evidence. *Renner v. Nemitz*, 2001 MT 202, ¶ 12, 306 Mont. 292, 33 P.3d 255. While the amount of testimony is minimal, we cannot conclude that the evidence, which we look at in a light most favorable to PTH, was a "mere scintilla" or was insufficient to support the District Court's finding that Mrs. Street "resided permanently at the cabin" between 1997 and 2003, using the Road for access. The record does not convince us that the court misapprehended the evidence or leave us with the impression that a mistake has been made; therefore, we will not disturb the court's finding. *Knutson*, ¶ 15. The Streets' historical use of the Road for access to Lot 14 during the prescriptive period supports the

6

court's conclusion that the scope of PTH's easement includes ingress and egress for year-round residential and recreational use for that lot. *Leichtfuss*, ¶ 30.

¶16    **2. Did the District Court err in concluding a prescriptive easement existed to Lots 15 and 16 for year-round residential and recreational use?**

¶17    The Schmids also argue the record does not support the District Court's conclusion that Lots 15 and 16 were historically used for residential purposes. Rather, they assert the record demonstrates that these lots were used only seasonally for recreational purposes, and then only as an extension of the use of Lot 14. The Schmids contend that seasonal recreational use alone cannot establish prescription because such occasional use is insufficient to notify the servient owner of an adverse claim and, thus, a prescriptive easement cannot be established for merely recreational purposes on Lots 15 and 16, let alone for residential purposes. The Schmids argue that, even if all three lots were viewed as a single unit, the historical use would be limited to one family for all three lots. In response, PTH argues that "[t]he rationale relied on by the Schmids to limit the scope of the prescriptive easement for Lots 14, 15 and 16 to seasonal use for recreation purposes is precisely the argument rejected by the Court in *Clark*."

¶18    In *Clark*, we affirmed the declaration of a prescriptive road easement for residential access to three subdivided tracts and a separate parcel, although only one of the properties previously contained a residence. *Clark*, ¶ 30. The dispute in *Clark* arose over "Section 33" in Missoula County. In 1971, the Dwyers purchased land in the eastern part of Section 33. Three tracts of land to the north of Dwyers' property had been subdivided in the 1960's. Between 1979 and 1986, the Clarks purchased land adjacent to

7

the Dwyers in Section 33, including all three of the subdivided tracts and a "Parcel A," a parcel divided from a farm property located in Section 33. Clarks resided in the original farmhouse next to Parcel A and used the disputed road to access that residence from 1979 to 1986. The Clarks built a home on one of their three northern tracts and moved there in 1991, continuing to use the disputed road. In 1986, the Clarks sold Parcel A to the Shrivers, who subsequently sold Parcel A to the Byrums. The disputed roadway, Byrum Lane, ran through Section 33 across the Dwyers' property, along a border of the Clarks' property, and continued onto the Byrums' property. Historically, Byrum Lane was used by the Clarks and their predecessors to access Parcel A, the three northern tracts and other nearby properties for residential and farming purposes. There was also evidence that Byrum Lane was used by the public and occasionally maintained by local government. In 1998, the Dwyers executed a sixty foot road and utility easement on Byrum Lane for the benefit of the Byrums. Later, the Dwyers and Byrums sought to prevent use of Byrum Lane for access to the Clarks' northern tracts, leading to litigation. *Clark*, ¶¶ 6-13.

¶19 We observed that all owners had been put on notice that the road was intended to service residences, noting the many years of service provided by the road for residential purposes to multiple properties and multiple owners, as enhanced by the recording of the three tract subdivision. We noted the evidence that Clarks had no intention of further subdividing the properties. We therefore concluded that a prescriptive easement had been established for residential use and that such use did not expand the scope of the easement beyond what was contemplated at the time of its creation. *Clark*, ¶ 30.

¶20     Here, the evidence is significantly different than in *Clark,* and the intended use of the Road to serve residences on Lots 15 and 16 exceeds historical use. The subject parcels were originally subdivided into separate lots in 1938, although a road was not then constructed to access the lots. Streets owned all of the subject lots and built the Road in the 1940s to access their cabin on Lot 14 and to recreate on Lots 15 and 16.[1] The Road is a single lane which is very narrow in places and difficult to pass because of snow in winter, as compared to the road lying upon 30 and 60-foot recorded easements in *Clark.* There is no evidence here that the Road served public access purposes or that it was maintained by local government, as in *Clark.* The history of this Road does not include multiple owners and multiple residential uses, as in *Clark.* Brittles Point property owners could not have reasonably expected from the historical use that the Road would be used to access Lots 15 and 16 for more than recreational purposes.

¶21     By granting PTH a prescriptive easement over the Road for residential use of Lots 15 and 16, the District Court erred by exceeding the scope of the Road's use for those lots as established by the Streets during the prescriptive period. *Leichtfuss*, ¶ 30. Historical use of the Road does not support access to Lots 15 and 16 for residential purposes. However, we reject Schmids' argument that the recreational use here is insufficient to give notice to the servient owner of an adverse claim and cannot, as a matter of law, create a prescriptive easement of any kind. While that may be the result in a different

---

[1] Mary Ann Street testified as follows:

Q. [W]hat activity took place on Lots 15 and 16?

A. Parking, camping, fishing, parties.

9

case, here the recreational use of Lots 15 and 16 occurred in conjunction with the residential use of co-owned Lot 14, providing a heightened notice of the use of Lots 15 and 16. Yet, this recreational use occurred on separately divided parcels, creating a clearly discrete historical use of those particular lots apart from the use of Lot 14 and establishing a separate, and narrower, prescriptive easement. These uses will not increase the burden upon the servient tenement. *Leichtfuss*, ¶ 30.

¶22 We affirm the District Court's judgment regarding the scope of the prescriptive easement over the Road for Lot 14. We reverse the District Court's judgment granting prescriptive use of the Road to access Lots 15 and 16 for residential purposes. We remand for the entry of an amended judgment and for any additional proceedings consistent with this opinion which may be necessary.

¶23 Affirmed in part, reversed in part, and remanded.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER