No. 80-170

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

KATHRYN B. CREMER, a Special Administratrix
of the Estate of Cornelius M. Cremer, Deceased,

Plaintiff and Respondent,

-vs-

CREMER RODEO LAND AND LIVESTOCK CO.,
AND LEO J. CREMER, JR.,

Defendants and Appellants.

---

Appeal from: District Court of the Sixth Judicial District,
In and for the County of Sweet Grass,
The Honorable Joseph Gary, Judge presiding.

Counsel of Record:

For Appellants:

William R. Morse, Absarokee, Montana
Arnold R. Berger, Billings, Montana

For Respondent:

Pedersen, Herndon, Harper & Munro, Billings,
Montana

---

Submitted on Briefs: January 22, 1981

Decided: APR 2 0 1981

Filed: APR 2 0 1981

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Cremer Rodeo Land and Livestock Company appeals the jury verdict and judgment of a Sweet Grass County District Court awarding certain real property to plaintiff.

Kathryn Cremer, the widow of Cornelius Cremer and the special administratrix of his estate, brought this cause originally to impose a constructive trust and compel the Cremer Rodeo Land and Livestock Company to deed certain land to her late husband's estate. In Cremer v. Cremer Rodeo Land and Livestock Co. (1979), ____ Mont. ____, 592 P.2d 485, 36 St.Rep. 541, this Court held, inter alia, that Kathryn Cremer had presented a sufficient case of adverse possession to submit to the jury. The cause was reversed and remanded for a new trial.

On remand a Sweet Grass County jury found in favor of Kathryn Cremer on the adverse possession claim, and the District Court awarded her the real property in issue pursuant to that verdict. The company appeals.

Leo J. Cremer, Sr., and Cornelius (Corny) M. Cremer enjoyed close brotherly and business relationships. Their father, John Cremer, who lived in Wisconsin, died in 1936. Their mother died five years later. After the death of their mother, another brother, Glynn Cremer, informally distributed what remained of their father's estate. Plaintiff, Corny's surviving spouse, claims that Leo, Sr., received Corny's share of the estate and used it to purchase the land subject of this action which is described as E1/2 of Sec. 34, Township 5 North, Range 15 East, M.P.M.

The October 14, 1944, deed from the previous owner of the land, J. Arvid Carlson, named the "Cremer Rodeo, Land

and Livestock Company," a Montana corporation owned by Leo Cremer, Sr., as the grantee. The deed was executed in Merrick County, Nebraska. Plaintiff claims that Leo, Sr., intended to convey this land to Corny but failed to do so prior to his death in 1953. She also contends that Leo, Sr.'s, widow, Bertha, delivered a deed to Corny shortly after Leo, Sr.'s, death, but that it was subsequently lost in a lawyer's office in Helena.

Corny, Kathryn, and their family occupied, used and paid taxes on the land from 1947 until approximately 1974. At that point it was discovered that Leo Cremer, Jr., acting on behalf of the company, had entered into an oil and gas lease of Section 34. Upon the death of Corny in 1975, plaintiff demanded a deed to Section 34, and, when no deed was delivered, this action ensued.

The Cremer Rodeo Land and Livestock Company raises the following issues for our review:

1. Did the court err in failing to instruct the jury on permissive use in conjunction with adverse possession?

2. Did the court err in failing to instruct the jury on the defense of laches?

3. Did the court err in failing to instruct the jury on the defense of estoppel?

4. Was there sufficient evidence of damage to support the verdict of $10,000?

The company maintains that it was reversible error for the District Court to refuse its offered instructions on permissive use. We disagree. In so finding, our analysis of the record finds it wanting of any credible evidence that Cornelius Cremer ever received express permission to use

Section 34.

This Court has long held and consistently affirmed the rule that "[o]rdinarily a party has the right to instructions adaptable to his theory of the case." Meinecke v. Skaggs (1949), 123 Mont. 308, 313, 213 P.2d 237, 240. Affirmed, Wollan v. Lord (1963), 142 Mont. 498, 385 P.2d 102. The Meinecke rule is not absolute, however, and this Court remains mindful of its limitations. In Gunderson v. Brewster (1970), 154 Mont. 405, 411, 466 P.2d 589, 592, Mr. Chief Justice Harrison wrote that the "right to instructions adaptable to a party's theory of the case if there be credible evidence thereon, belongs to both parties, not just to one." Emphasis supplied.

The facts of this case are not uncommon. Family relationships that proceed through generations on a friendly and amicable basis frequently become adverse, with familial tolerance being cast aside over the prospect of enriching financial position. Although Leo Cremer, Jr., asserts that Cornelius Cremer occupied Section 34 with the permission of the company, his proof does not reveal that express permission was ever granted.

Implied acquiescence is not the same as permission. Weldon v. Heron (1967), 78 N.M. 427, 432 P.2d 392; Ivons-Nispel, Inc. v. Lowe (1964), 347 Mass. 760, 200 N.E.2d 282. On the contrary, possession has been held to be adverse where possession was with forbearance of the title holder who was aware of another's possession and failed to prohibit it. Weldon v. Heron, supra, citing Myran v. Smith (1931), 117 Cal.App. 355, 4 P.2d 219. Therefore, possession may be adverse even though the owner does not interfere with

entry and the possessor understands that there will be no future interference with his possession. Hoelmer v. Heiskell (1949), 359 Mo. 236, 221 S.W.2d 142.

In 1949 the Minnesota court capsulized the crucial distinction between "acquiescence" and "permission" as it exists with regard to the law of adverse possession:

> ". . . It must be apparent, therefore, that 'acquiescence' and 'permission' as used in this connection are not synonymous. 'Acquiescence,' regardless of what it might mean otherwise, means, when used in this connection, passive conduct on the part of the owner of the servient estate consisting of failure on his part to assert his paramount rights against the invasion thereof by the adverse user. 'Permission' means more than mere acquiescence; it denotes the grant of a permission in fact or a license. Naporra v. Weckwerth, 178 Minn. 203, 226 N.W. 569, 65 A.L.R. 124. See, Dartnell v. Bidwell, 115 Me. 227, 98 A. 743, 5 A.L.R. 1320; Davis v. Wilkinson, 140 Va. 672, 125 S.E. 700.

> ". . .

> "In the case of permissive use, the user is under the owner of the servient estate; in a case of acquiescence, it is against him. See, Zollinger v. Frank, 110 Utah 514, 175 P.2d 714, 170 A.L.R. 770." Dozier v. Krmpotich (1949), 227 Minn. 503, 507, 35 N.W.2d 696, 699; reaffirmed, Ehle v. Prosser (1972), 293 Minn. 183, 197 N.W.2d 458.

In sum we have reviewed the evidence produced at trial and find no evidence of permissive use. Cornelius Cremer treated the land he possessed as his own, paid taxes on the property, and improved the property. In the absence of any evidence supporting this portion of the company's case, we find that no reversible error could have occurred as a result of the District Court's refusal to give a permissive use instruction.

This Court takes note of the fact that the company opposed plaintiff's offered instruction covering permissive

use for the reason that the instruction defining a "hostile" holding covered the same subject matter. The company's reasoning is equally applicable to its proposed instruction on permissive use.

The company also asserts that the District Court erred in failing to instruct the jury on the defenses of laches and estoppel. We find, however, that these legal issues were previously decided by this Court, and it was not error for the instructions to be refused. See Fiscus v. Beartooth Electric Cooperative, Inc. (1979), ____ Mont. ____, 591 P.2d 196, 36 St.Rep. 333.

> "The rule is well established and long adhered to in this state that where, upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal; and this, although upon its subsequent consideration the Supreme Court may be clearly of opinion that the former decision is erroneous . . . it is a final adjudication from the consequences of which this Court may not depart, nor the parties relieve themselves [citing cases]." Carlson v. Northern Pac. R. Co. (1929), 86 Mont. 78, 81, 281 P. 913, 914.

Our first opinion stated the law of the case on these issues. It was binding upon the trial court and is now binding upon us. Anderson v. Border (1930), 87 Mont. 4, 285 P. 174; Apple v. Edwards (1949), 123 Mont. 135, 211 P.2d 138.

Our review of the first Cremer opinion compels us to find that the trial of this case did not change its character in such a way as to free us from our original decision. This Court's ruling that "this is not a case for the application of" the equitable principles of laches or

-6-

estoppel continues to be valid, and we are not at liberty to find error in the District Court's refusal to instruct the jury on these theories.

Appellant's final assignment of error alleges that there was insufficient evidence of the amount of damages to sustain the $10,000 verdict against the company. Our review of the record persuades us that there was indeed sufficient evidence to support the jury's finding of damages in the amount of $10,000.

The following evidence was adduced at trial: Leo Cremer, Jr., testified that he had received $1.00 per acre in delay rentals for a period of roughly seven years. Based on that testimony the jury determined that Leo Cremer, Jr., acting on behalf of the company, received $320 per year from the delay rentals involving Section 34, and, therefore, during a seven-year period the company's total receipts from this source would be in the neighborhood of $2,300.

Bill Cremer, grandson of Kathryn Cremer and her lessee until her ouster in 1977, testified with particularity about his gross income from Section 34 and the expenses he had incurred in the realization of that income. He testified that the property had yielded an average annual net income of $3,862 in the years he farmed Section 34. By reason of the ouster, the Cornelius Cremer family missed two harvests and maintained that the damage sustained in lost profits was $7,724.

When the amount of delay rental receipts is added to the amount of lost profits, the $10,000 figure is arrived at.

This Court has long held that a judgment for damages

must be supported by substantial evidence that is not the product of mere guess or speculation. See Bjerum v. Wieber (1967), 149 Mont. 375, 427 P.2d 62. We observe that there is no uncertainty as to the existence of substantial damages. Indeed, such damages exist whenever the owner of property is deprived of the use of that property. Recovery of damages will not be denied, even if the mathematical precision of the figure is challenged, provided the evidence is sufficient to afford a reasonable basis for determining the specific amount awarded. Accord, Jacqueline's Washington, Inc. v. Mercantile Stores Co. (1972), 80 Wash.2d 784, 498 P.2d 870. We have reviewed the evidence regarding the amount of damage incurred by respondent and find the evidence sufficient to support the verdict.

Accordingly, we affirm.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

-8-