**FILED**

November 20 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0739

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 264

BROWN & BROWN OF MT, INC.,
a corporation,

        Plaintiff, Appellee, and
        Cross-Appellant,

    v.

KEITH RATY and COLLEEN RATY,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Twelfth Judicial District,
                     In and For the County of Hill, Cause No.  DV-08-190
                     Honorable Daniel A. Boucher, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Gregory J. Hatley, Davis, Hatley, Haffeman & Tighe, P.C.,
                Great Falls, Montana

        For Appellee:

                J.  Devlan Geddes, Goetz, Gallik & Baldwin, P.C., Bozeman, Montana

                Thomas J. Sheehy, Sheehy Law Office, PLLC, Big Sandy, Montana

                Submitted on Briefs:  September 12, 2012

                             Decided:  November 20, 2012

Filed:

                           _____
                                      Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Brown & Brown of MT, Inc. (Brown) commenced an action in the Twelfth Judicial District Court, Hill County, seeking a preliminary injunction preventing neighbors Keith and Colleen Raty from crossing Brown's land, or in the alternative, a declaratory judgment stating that the Ratys do not have a prescriptive easement. The Ratys appeal the decision of the District Court granting a prescriptive easement in their favor but limiting the width of the prescriptive easement to twenty feet. Brown cross-appeals, arguing that the District Court erred in granting summary judgment because genuine issues of material fact exist concerning whether the Ratys' use was permissive, whether the prescriptive easement included residential and recreational uses, and the width of the prescriptive easement. We affirm in part, reverse in part, and remand for modification of the Final Judgment.

## ISSUES

¶2     A restatement of the issues raised by both parties on appeal is:

¶3     1. Did the District Court err in granting summary judgment on the existence of a prescriptive easement because material issues of fact exist with respect to whether the claimants' use of the trail was adverse or permissive?

¶4     2. Did the District Court err in granting summary judgment on the existence of a prescriptive easement that included residential and recreational uses?

¶5     3. Did the District Court err in limiting the width of the prescriptive easement to twenty feet for the purpose of trailing cattle?

2

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 The Ratys own two parcels of land in Hill County known as the Upper Setty Ranch and Lower Setty Ranch. A primitive roadway connecting these two properties passes through land owned by Brown, the state of Montana, and Rita and Richard Grabofsky. Traveling the road from Lower to Upper Setty Ranch, the road first enters property owned by the Grabofskys, then crosses State land, and finally enters property owned by Brown. The Brown parcel is known as Greenfield. Brown is a closely held corporation managed by Earl Brown, Sr. and Allison Florance. The dispute between the parties arises from the Ratys' use of the road as it passes through Greenfield.

¶7 The parties presented evidence and testimony concerning the history of the road in question. The subject road existed even prior to an initial survey of the area by the U.S. government in 1896. Ova and Lacrettia Setty were the original homestead owners of the Upper and Lower Setty Ranches. Steve Boyce, Colleen Raty's grandfather, bought these parcels from the Settys in 1948. The original homestead owners reserved a one-acre life estate on the Upper Setty Ranch which was used as a residence until 1980. The Upper Setty Ranch contains a cabin that continues to be used occasionally by the Ratys. Colleen Raty's father, Robert Boyce, purchased the Upper and Lower Setty Ranches in 1963. In 1997, the Ratys purchased the Lower Setty Ranch and a portion of the Upper Setty Ranch from Robert Boyce. The Ratys purchased the remaining portion of the Upper Setty Ranch from Robert Boyce in 2004.

¶8 The subject road was used by the Ratys and their predecessors in interest primarily for trailing cattle between the Upper and Lower Setty Ranches. Robert Boyce testified

3

by affidavit and deposition to the various agricultural, residential, and recreational uses of the subject roadway since 1948. These uses included trailing herds of livestock, horseback riding, walking, driving agricultural and construction equipment, hauling materials to repair or build fences, spraying weeds, maintaining and developing water sources, hauling firewood, riding snowmobiles, accessing residences, hunting, and fishing. Robert Boyce considered his use of the roadway a matter of right and never asked Brown for permission. Keith Raty offered his personal knowledge of the use of the road since 1987. Keith Raty's testimony reiterated that the historical uses described by Robert Boyce continued when the Ratys purchased the Upper and Lower Setty Ranches. The Ratys submitted photographs showing use of the road for moving cattle, driving vehicles and equipment, and holding family gatherings at the cabin on the Upper Setty Ranch.

¶9   Earl Brown, Sr. grew up on the Brown Ranch. His father, Steve Brown, managed the Brown Ranch until shortly before his death in 2002. Earl Brown, Sr. testified by affidavit that he recalled Robert Boyce letting his father know when he planned to move cattle so that the Browns could move their cattle away from the subject roadway and prevent the herds from intermixing. When Earl Brown, Sr. took over the cattle operation, the neighborly relationship continued. Keith Raty would ask if it would be okay to trail cattle down the road on a particular week or day. Earl Brown, Sr. could not recall a time when he denied the Ratys access or use of the road. In either 2003 or 2004, Brown installed a locked cable gate at one end of Greenfield to control access by hunters. Keith Raty requested a key to the lock. Earl Brown, Sr. lent Keith Raty the key, and he

4

returned it when he was done using it. While Earl Brown, Sr. was aware of the Ratys pulling a horse trailer up the subject road and driving a vehicle up the road to repair fences and put out salt, he stated that he was generally unaware of the Ratys' vehicle use on the road. Earl Brown, Sr. believed that the Ratys usually used an alternate route when accessing the Upper Setty Ranch by vehicle. He was generally unaware of the subject road being used to access the cabin or for other recreational purposes, but he noted that he often observed the Ratys' vehicles at the cabin around the Fourth of July.

¶10 Earl Brown, Jr., who has worked for Brown and the Ratys, testified in his deposition that for virtually as long as he could remember, he knew that the Ratys trailed cattle along the subject road. He also stated that he was aware of other uses of the road by the Ratys, including driving a tractor and sprayer up the road to spray weeds. Earl Brown, Jr. testified that he was unaware of the Ratys ever asking permission to use the road in question.

¶11 In the summer of 2003, the Grabofskys started locking a gate across the subject road where it enters their property. Keith Raty was moving cattle down the road when he encountered the lock. He cut the lock and continued to use the road. Keith Raty called Earl Brown, Sr. on the phone to tell him that he had cut the lock. The Ratys brought a lawsuit against the Grabofskys claiming an existing prescriptive easement. The parties reached a settlement agreement on February 21, 2008. The agreement confirmed and memorialized the existence of a prescriptive easement. The prescriptive easement granted the Ratys a right-of-way to traverse the existing road for ingress and egress to Upper Setty Ranch. The agreement set forth the following approved purposes for which

5

the easement could be used: mending or installing fences; caring for, moving, or otherwise working with livestock; maintaining or developing water sources; spraying weeds; maintaining roads; hauling firewood, posts, and poles; driving agricultural or construction equipment; and occasional residential access. The agreement limited the easement to a width of twenty feet, but acknowledged that livestock will not necessarily remain within the designated width. Ratys agreed to use best efforts to keep livestock within a distance of fifty feet from the centerline of the road.

¶12 The Ratys purchased a right-of-way deed from the State in 2006 allowing them to use the subject road as it passes through State land. The State granted the Ratys a twenty-foot-wide easement to access the residence and outbuildings on the Upper Setty Ranch and conduct normal ranching and farming activities.

¶13 After the Ratys filed the lawsuit against the Grabofskys, similar disputes arose between the Ratys and Brown over access and use of the subject roadway. In May 2004, Allison Florance of Brown made a phone call to the Ratys and insisted that they would now be required to ask permission to use the road as it passes through Greenfield. The Ratys responded that they would not ask Brown for permission, but would continue to notify Brown when they intended to use the road. Even after Allison Florance denied them access to Greenfield, the Ratys continued to use the road. On July 13, 2008, Allison Florance wrote a letter to the Ratys informing them that Brown would begin locking several gates across the roadway as it passed through Greenfield. In August 2008, Brown locked the gates that previously provided entry to Greenfield. Keith Raty cut the locks and continued to make use of the subject road.

¶14 On September 17, 2008, Brown initiated this lawsuit by filing a Complaint and Application for Preliminary Injunction. Brown sought a preliminary injunction preventing the Ratys from crossing Greenfield without permission. In the alternative, Brown asked the District Court to issue a declaratory judgment stating that the Ratys do not have a prescriptive easement across Greenfield. The Ratys filed a motion for summary judgment on the existence of a prescriptive easement. The District Court heard oral arguments on the Ratys' motion for summary judgment on January 21, 2010. On October 29, 2010, the District Court issued its order granting summary judgment in favor of the Ratys. The District Court's order stated that the Ratys have a prescriptive easement over Greenfield "so that they may trail cattle over a 20 foot wide route and engage in other travel necessary to maintenance of the cattle and the property on which the cattle are placed."

¶15 On December 10, 2010, the Ratys filed a motion for entry of judgment. In their supporting brief, the Ratys sought modification of the District Court's order on summary judgment to clarify the court's ruling on the width of the prescriptive easement solely as it pertains to trailing cattle. The District Court entered a Final Judgment on November 3, 2011. Judge David G. Rice retired shortly after the summary judgment decision was issued, so the Final Judgment was entered by Judge Daniel A. Boucher. The Final Judgment limited the width of the prescriptive easement to twenty feet. The judgment set forth the permitted uses of the prescriptive easement as follows: (1) trailing cattle and engaging in other travel necessary for the maintenance of the cattle and the property on which the cattle are placed; (2) residential uses associated with the cabin/residence

7

maintained on the Upper Setty Ranch; and (3) recreational uses associated with the cabin/residence located on the Upper Setty Ranch.

¶16    The Ratys appeal the District Court's limitation of the width of the prescriptive easement to twenty feet, and request reversal on this issue and remand for the sole purpose of modifying the Final Judgment.  Brown cross-appeals seeking reversal of the District Court's grant of summary judgment and entry of Final Judgment.  Specifically, Brown argues that genuine issues of material fact exist regarding whether the Ratys' use of the subject road was permissive or a product of neighborly accommodation.  Brown also challenges whether the prescriptive easement properly included residential and recreational uses, and disputes the width of the prescriptive easement found by the District Court.

## STANDARD OF REVIEW

¶17    We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as did the district court.  *Davis v. Hall*, 2012 MT 125, ¶ 15, 365 Mont. 216, 280 P.3d 261.  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  M. R. Civ. P. 56(c)(3).  The party moving for summary judgment has the initial burden of proving that no genuine issues of material fact exist.  *Myers v. Dee*, 2011 MT 244, ¶ 10, 362 Mont. 178, 261 P.3d 1054.  The burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue of material fact exists.  *Myers*, ¶ 10.

**DISCUSSION**

¶18 *1. Did the District Court err in granting summary judgment on the existence of a prescriptive easement because material issues of fact exist with respect to whether the claimants' use of the trail was adverse or permissive?*

¶19 "The proponent of a prescriptive easement must show open, notorious, exclusive, adverse, continuous, and uninterrupted use over the five-year statutory period[1] by clear and convincing evidence." *Schmid v. Pastor*, 2009 MT 280, ¶ 11, 352 Mont. 178, 216 P.3d 192; *Knutson v. Schroeder*, 2008 MT 139, ¶ 23, 343 Mont. 81, 183 P.3d 881. Since the theory of prescriptive easement is based on adverse use, no such easement can be acquired if the owner of the servient estate shows that use was permissive. *Leisz v. Avista Corp.*, 2007 MT 347, ¶ 17, 340 Mont. 294, 174 P.3d 481; *Public Lands Access Ass'n v. Boone & Crockett Club Found.*, 259 Mont. 279, 283-84, 856 P.2d 525, 527 (1993). Once the claimant satisfies his burden, "a presumption of adverse use arises and the burden shifts to the landowner affected by the prescriptive claim to establish that the claimant's use was permissive." *Leisz*, ¶ 17 (quoting *Wareing v. Schreckendgust*, 280 Mont. 196, 209, 930 P.2d 37, 45 (1996)).

¶20 To meet the "adverse" requirement, "the use of the alleged easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the landowner, and such claim must be known to and acquiesced in by the landowner." *Heller v. Gremaux*, 2002 MT 199, ¶ 13, 311 Mont. 178, 53 P.3d 1259; *Swandal Ranch Co. v. Hunt*, 276 Mont. 229, 233, 915 P.2d 840, 843 (1996). When

---

[1] Since 1953, the statutory period required to establish an adverse possession claim has been five years pursuant to § 70-19-404, MCA. Prior to 1953, the statutory period was ten years.

evaluating whether the use was adverse, it is important to note that "[i]mplied acquiescence is not the same as permission." *Cremer v. Cremer Rodeo Land & Livestock Co.*, 192 Mont. 208, 211, 627 P.2d 1199, 1201 (1981). The *Cremer* decision explained the distinction between implied acquiescence and permission as follows:

> It must be apparent, therefore, that "acquiescence" and "permission" as used in this connection are not synonymous. "Acquiescence," regardless of what it might mean otherwise, means, when used in this connection, passive conduct on the part of the owner of the servient estate consisting of failure on his part to assert his paramount rights against the invasion thereof by the adverse user. "Permission" means more than mere acquiescence; it denotes the grant of a permission in fact or a license.

*Cremer*, 192 Mont. at 212, 627 P.2d at 1201 (quoting *Dozier v. Krmpotich*, 35 N.W.2d 696, 699 (Minn. 1949)). While the servient landowner must know about and acquiesce to the user's claim of right, Montana law does not require a prescriptive easement claimant to verbally communicate a hostile intent. *Albert v. Hastetter*, 2002 MT 123, ¶ 28, 310 Mont. 82, 48 P.3d 749; *Warnack v. Coneen Family Trust*, 278 Mont. 80, 83, 923 P.2d 1087, 1089 (1996).

¶21 Generally, some circumstance or act tending to indicate that the use was not merely permissive is required. *Heller*, ¶ 14; *Wilson v. Chestnut*, 164 Mont. 484, 490, 525 P.2d 24, 27 (1974). Use of a neighbor's land based on neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement. *Public Lands*, 259 Mont. at 284, 856 P.2d at 528. "[N]eighborly accommodation is a form of permissive use which, by custom, does not require permission at every passing." *Tomlin Enters., Inc. v. Althoff*, 2004 MT 383, ¶ 18, 325 Mont. 99, 103 P.3d 1069; *Heller*, ¶ 14.

10

¶22 In *Wareing*, a landowner claimed he had established a prescriptive easement on an irrigation ditch that passed through a neighbor's land. *Wareing*, 280 Mont. at 199, 930 P.2d at 39. The claimant established the elements of a prescriptive right necessary to raise a presumption of adverseness, but the neighbor argued that the claimant's use was permissive. *Wareing*, 280 Mont. at 209, 930 P.2d at 45. In support of his argument, the neighbor presented evidence showing that the claimant notified the neighbor when he intended to turn on the water and make use of the ditch. *Wareing*, 280 Mont. at 210, 930 P.2d at 45. The neighbor attempted to characterize this notification as an implied request for permission. *Wareing*, 280 Mont. at 210, 930 P.2d at 45. This Court rejected that argument, finding instead that the claimant never expressly sought permission from the neighbor to use the ditch and only contacted him pursuant to a neighborly custom. *Wareing*, 280 Mont. at 210, 930 P.2d at 45.

¶23 Similarly, the District Court determined that the Ratys and their predecessors in interest never asked Brown for permission to pass through Greenfield. The District Court concluded that the Ratys presented sufficient evidence of the existence of a prescriptive easement necessary to raise a presumption of adverse use. The burden then shifted to Brown to rebut this presumption with specific evidence showing the use was permissive or the result of neighborly accommodation or implied acquiescence.

¶24 It is undisputed that the Ratys and their predecessors in interest would often contact and notify Brown before they made use of the subject road. Brown argues that the Ratys were asking for permission when they would contact Brown and ask "would it be okay to go on such and such a day[?]" However, undisputed testimony from both

11

parties reveals that when the Ratys contacted Brown, they did so to notify Brown of the particular date on which they intended to move their cattle. This notice would allow Brown the opportunity to move any of its cattle from the area surrounding the road to avoid mixing the herds together and prevent other potential conflicts. Similar to *Wareing*, the Ratys' actions are best understood as simply abiding by custom to advise their neighbors of an upcoming use. Brown's attempt to characterize these conversations as a request for permission does not create a genuine issue of material fact. We agree with the District Court's conclusion that these conversations between the Ratys and Brown do not create a genuine issue of material fact as to whether the Ratys' use of the subject road was permissive in nature.

¶25 Next, Brown contends that the Ratys' use of the road in question was a product of neighborly accommodation. Brown's argument is based on the general proposition that landowners in the area allow their neighbors to trail cattle across their land as a courtesy. Brown offered affidavits from landowners in the area as evidence of the general attitude that access is allowed as long as the neighbors are respectful. Brown also points to a time when Keith Raty requested and obtained a key to unlock a gate in Greenfield. The Ratys counter that they and their predecessors in interest have always used the subject road as it passes through Greenfield as a matter of right.

¶26 The undisputed facts demonstrate that Brown impliedly acquiesced in the Ratys' use of the road prior to 2004 and did not require the necessary "permission in fact or a license" that would defeat the Ratys' claim of adverse use. Furthermore, Brown was put on notice of the Ratys' adverse use of the road when Keith Raty cut a gate lock in August

2003 and notified Brown of the incident. When Allison Florance insisted in 2004 that the Ratys must ask permission to use the road, the Ratys refused to do so. Even when Brown denied the Ratys access to Greenfield and locked the gates in 2008, Keith Raty continued to use the road as a matter of right and would cut the locks whenever he encountered them. The fact that Keith Raty borrowed a key to one of the locks in 2004 does not sufficiently rebut the presumption of adverseness. The undisputed facts establish that the Ratys would have continued to use the road as they pleased. If the Ratys had not been given a key, they simply would have cut the locks as they did in 2003 when the Grabofskys placed a lock and in 2008 when Brown installed locks and did not provide a key.

¶27 In further support of its argument that the Ratys' use of the road through Greenfield was permissive, Brown directs our attention to its use of gates to control access to Greenfield. Montana case law recognizes that the presence of gates alone will not defeat a prescriptive easement, but they are often considered strong evidence of permissive use. *Rathbun v. Robson*, 203 Mont. 319, 323, 661 P.2d 850, 852 (1983). For example, we have concluded that where passage through a roadway is barred by gates that parties are required to open and close during usage, such an arrangement is strong evidence that the public has a mere license to pass over the roadway. *Public Lands*, 259 Mont. at 285, 856 P.2d at 528.

¶28 The District Court determined that Brown's placement of locks on gates across the alleged easement defeated its defense of permissive use through neighborly accommodation. Brown offered testimony that the gates were first locked in either 2003

13

or 2004 to prevent access by hunters. Prior to being locked in either 2003 or 2004, it appears that the sole purpose of the gates was livestock control, which is insufficient to overcome the presumption of adverse use. *See Lemont Land Corp. v. Rogers*, 269 Mont. 180, 186, 887 P.2d 724, 728 (1994). The instant case is highly distinguishable from *Public Lands*, in which the claimants sought to prove an easement on behalf of the public. Here, although the Ratys opened and closed gates allowing access to Greenfield, the Ratys' use of the road was always as a matter of right—not merely under terms agreeable to the landowner. We agree with the District Court that Brown's evidence that the Ratys were respectful and always closed the gates behind them is insufficient to create a genuine issue of material fact.

¶29 Brown failed to raise a genuine issue of material fact sufficient to overcome the presumption of adverse use and prevent the entry of summary judgment in favor of the Ratys. We hold that the District Court did not err in granting summary judgment on the existence of a prescriptive easement.

¶30 *2. Did the District Court err in granting summary judgment on the existence of a prescriptive easement that included residential and recreational uses?*

¶31 "The extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired." Section 70-17-106, MCA. The right to use an easement acquired by prescription cannot exceed the use which was made during the prescriptive period. *Kelly v. Wallace*, 1998 MT 307, ¶ 37, 292 Mont. 129, 972 P.2d 1117; *Ruana v. Grigonis*, 275 Mont. 441, 454, 913 P.2d 1247, 1255 (1996). If an easement is not specifically defined, it need only be such as is reasonably necessary and

14

convenient for the purpose for which it was created. *Clark v. Heirs & Devisees of Dwyer*, 2007 MT 237, ¶ 27, 339 Mont. 197, 170 P.3d 927; *Leffingwell Ranch, Inc. v. Cieri*, 276 Mont. 421, 430, 916 P.2d 751, 757 (1996); *Strahan v. Bush*, 237 Mont. 265, 268, 773 P.2d 718, 720 (1989). Frequency of use during the prescriptive period limits the frequency of future use. *Kelly*, ¶ 34.

¶32 The District Court included residential and recreational uses associated with the cabin/residence located on the Upper Setty Ranch as permitted uses pursuant to the prescriptive easement. Brown argues that the Ratys presented insufficient evidence to substantiate these uses which were at best occasional and sporadic.

¶33 The affidavits of Keith Raty and Robert Boyce aver that the Ratys and their predecessors in interest used the subject road to access the cabin on the Upper Setty Ranch, and used this cabin for family gatherings, working cattle, fencing, hunting, and fishing. Eldwin Brown testified by affidavit that the Ratys used the cabin only occasionally. The affidavits of Earl Brown, Sr. and Earl Brown, Jr. state that they were aware of the Ratys' residential and recreational uses, but believe that the Ratys usually accessed the Upper Setty Ranch through a different route that did not pass through Greenfield.

¶34 Our case law has long recognized that " '[c]ontinuous use' does not mean constant use; rather, if the claimant used the property in dispute whenever he desired, without interference by the owner of the servient estate, the use was continuous and uninterrupted." *Meadow Lake Estates Homeowners Ass'n v. Shoemaker*, 2008 MT 41, ¶ 40, 341 Mont. 345, 178 P.3d 81; *Cook v. Hartman*, 2003 MT 251, ¶ 29, 317 Mont. 343,

77 P.3d 231 (quoting *Confederated Salish & Kootenai Tribes v. Vulles*, 437 F.2d 177, 180 (9th Cir. 1971)). The evidence is clear that the Ratys made use of the prescriptive easement for residential and recreational purposes whenever they desired. Although these uses were secondary to the primary use—trailing cattle—the undisputed evidence establishes that residential and recreational uses were within the scope of the prescriptive easement. The fact that the Ratys may have occasionally used alternative routes to access the Upper Setty Ranch cabin is unpersuasive because the Ratys are not claiming an easement by necessity. As the District Court pointed out, the affiants relied on by Brown had no real direct knowledge regarding the extent that the Ratys and their predecessors in interest used the road.

¶35     We hold that the District Court did not err in concluding that the prescriptive easement included residential and recreational uses. For the sake of clarification and to alleviate Brown's concern that the District Court has granted the Ratys unlimited use of the road for residential and recreational uses, we remand this issue to the District Court for the purpose of limiting the residential and recreational use of the prescriptive easement to those historical uses established during the prescriptive period.

¶36     *3. Did the District Court err in limiting the width of the prescriptive easement to twenty feet for the purpose of trailing cattle?*

¶37     Since the extent of a servitude is determined by the nature of the enjoyment by which it is acquired, the width of a prescriptive easement must be limited to the width actually used during the prescriptive period. *See* Section 70-17-106, MCA. When

16

defining an easement, a court should consider what is "reasonably necessary and convenient for the purpose for which it was created." *Clark*, ¶ 27.

¶38 The District Court limited the width of the prescriptive easement to twenty feet. The Ratys contend that the District Court erred because they presented evidence showing that their cattle have not historically remained within the twenty-foot width and cannot be expected to do so in the future. Brown also takes issue with the width of the prescriptive easement, arguing that genuine issues of material fact exist because the Ratys failed to prove what widths were used along what portions of the subject road.

¶39 The affidavits of Robert Boyce and Keith Raty clearly show that the Ratys used the road to trail cattle herds of varying size throughout the year. The Ratys submitted photographs taken while moving cattle along the subject road to show that the cattle do not remain within a strict distance from the center of the road. Brown is involved in the cattle business and no doubt understands that cattle do not simply walk in straight lines and remain within strict width limitations when being trailed through areas without fences. Considering the nature of cattle and the historical use of the road, we hold that the District Court erred when it limited the width of the prescriptive easement to twenty feet for the purpose of trailing cattle. We reverse the District Court's ruling on this issue and remand for the purpose of modifying paragraph four of the Final Judgment to reflect the fact that when the easement is being used to trail cattle, the Ratys are expected to use best efforts to keep their cattle as close to the road as is reasonably possible, but the cattle are not required to remain at all times within the twenty-foot width of the easement.

**CONCLUSION**

¶40 For the foregoing reasons, we affirm the District Court's determination that the Ratys have established by clear and convincing evidence the existence of a prescriptive easement. We reverse the District Court's decision to limit the width of the prescriptive easement to twenty feet for the purpose of trailing cattle. We remand this case to the District Court for modification of paragraph four of its Final Judgment in accordance with our resolution of issues two and three.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ BETH BAKER
/S/ BRIAN MORRIS