DA 13-0496

FILED

April 22 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 106

LEWIS AND CLARK COUNTY,

      Plaintiff, Appellee,
      and Cross-Appellant,

  v.

HILTRUD and JOCHEN SCHROEDER,

      Defendants and Appellants,

   and

MARK and ROXA RELLER,

      Defendants and Cross-Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. BDV 2010-863
                Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Hiltrud Schroeder, self-represented; Jochen Schroeder, self-represented;
                Helena, Montana

        For Appellee and Cross-Appellant:

                Leo J. Gallagher, County Attorney; K. Paul Stahl, Deputy County
                Attorney; Helena, Montana

        For Cross-Appellees:

                David K. W. Wilson, Jr.; Morrison, Sherwood, Wilson & Deola PLLP;
                Helena, Montana

Submitted on Briefs:  March 12, 2014
Decided:  April 22, 2014

Filed:

_____
                          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Hiltrud and Jochen Schroeder (Schroeders) appeal from the order entered by the First Judicial District Court, Lewis and Clark County, Hon. Jeffrey M. Sherlock presiding, decreeing that a portion of Eagle Ridge Road is not a public road.  Lewis and Clark County (County) cross-appeals from the same order.  We affirm and restate the issues presented as follows:

¶2      *1. Should this Court "clarify" the order of Judge Seeley at issue in* Schroeder I *in light of the District Court's order in this case?*

¶3      *2. Did the District Court misapply the law and misapprehend the evidence of prescriptive use when it determined that no public prescriptive right exists over a portion of Eagle Ridge Road?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      The subject of this dispute, Eagle Ridge Road, connects to Birdseye Road in the north Helena valley.  It is approximately 1.2 miles long[1] and generally runs in an easterly direction from its connection with Birdseye Road.  In 1993, the landowners along Eagle Ridge Road petitioned the County to create a road improvement district pursuant to § 7-14-2901, et seq., MCA (repealed 2009).  The County created a road improvement district, but replaced it in 1994 with a rural improvement district (RID) pursuant to § 7-12-2102, MCA.  The County attached a subdivision map (Map) to the resolution creating the RID, which depicts Eagle Ridge Road in relation to the surrounding

---

[1] The exact length of Eagle Ridge Road is 1.17 miles; however, throughout these proceedings, the parties have used the 1.2 figure for convenience.  We will also use the 1.2 figure.

properties. The Map depicts Eagle Ridge Road terminating at the point where it intersects with the property described on the Map as "Wood 11331," slightly past the 0.9 mile mark. Since 1994, the County has levied RID assessments on the properties located along the road. This money is used to pay for snow plowing and road maintenance.

¶5 In 1995, the County entered into an agreement with the Eagle Ridge Road Association (Association), a representative body of the landowners within the RID, to oversee the plowing and maintenance of Eagle Ridge Road. Pursuant to the agreement, RID funds were used to reimburse independent contractors, the Association, and Association members for this work. Initially, a 1949 Dodge truck owned by the Association was used to plow the entire 1.2 mile length of Eagle Ridge Road. The adjoining driveways of the individual landowners were commonly plowed as well.

¶6 In 2001, Sandra Hardesty, then an owner of property near the 1.2 mile mark, complained to the County that maintenance was not being performed all the way to the end of Eagle Ridge Road, adjacent to her residence. The County responded by sending her copies of the documents creating the RID and the maintenance agreement, and encouraging her "to work out any road maintenance issues with the Eagle Ridge Road Association." The County also sent her a copy of GIS mapping, which, in contrast to the Map, depicted Eagle Ridge Road ending at the 1.2 mile mark.

¶7 The 1949 Dodge snowplow was sold in 2004, and RID funds were used to purchase a 1971 Suburban as a replacement snowplow. The County's name appeared on

the Suburban's title for insurance purposes, and the Suburban bore exempt license plates. Both the RID and various private individuals paid the costs of maintaining the Suburban. Occasionally, these individuals were reimbursed by the Association, but the Association was not always reimbursed by the County. In 2010, the County transferred title of the Suburban to the Association and began paying the Association $1300 annually in RID funds to cover the cost of plowing.

¶8 The County also expended RID money improving Eagle Ridge Road. A May 27, 2010 invoice from Three Mile Transport of Helena indicated that the RID was billed for "blading" the entire length of Eagle Ridge Road. However, Eric Griffin, the Public Works Director for the County, modified the arrangement so that the last 0.3 miles of the Road were not included in the work performed by Three Mile Transport. On one occasion, however, the arrangement was departed from and Three Mile Transport applied "road mix" to the entire length of Eagle Ridge Road.

¶9 On September 10, 2010, the County filed a Complaint for Declaratory Judgment, asking the District Court to declare that the entirety of Eagle Ridge Road is a sixty-foot public or county road or a sixty-foot public access easement from its intersection with Birdseye Road. On September 17, 2012, the County moved for partial summary judgment, arguing that the undisputed facts established that the portion of Eagle Ridge Road from its intersection with Birdseye Road to the Schroeder property (near the 0.7 mile mark) is a sixty-foot public easement. The Schroeders and Mark and Roxa Reller

4

(Rellers), both of whom live within the RID, filed responses. All of the other property owners along Eagle Ridge Road either defaulted or signed consent agreements. The District Court granted the County's motion, determining that none of the parties "dispute[] that Eagle Ridge Road . . . is a 60-foot wide county/public road from its place of origin on Birdseye Road to what the parties have referred to as the 'Y.'"[2] The "Y" is the intersection of Eagle Ridge Road and Windy Ridge Road near the Schroeder property. The District Court further concluded that "the nature of the road beyond the 'Y,' such as its length and width, are factual disputes that need to be resolved at trial."

¶10 The District Court conducted a bench trial and issued its Findings of Fact, Conclusions of Law, and Order on June 27, 2013. The District Court discussed our prior holding concerning Eagle Ridge Road in *Schroeder v. Lewis & Clark Co.*, 2011 MT 220N, 362 Mont. 544 (Table), 272 P.3d 125 (Table). In that case, which we refer to herein as "*Schroeder I*," the Schroeders appealed the order of the District Court, Hon. Kathy Seeley presiding, which determined that "Eagle Ridge Road is a public road, including that portion thereof that traverses the Schroeders' property." Specifically at issue in that case was whether a public prescriptive easement existed along the road *on the Schroeders' property*. In a noncitable memorandum opinion, we affirmed the decision of Judge Seeley, holding that she did not err in concluding that Eagle Ridge Road "was a public road upon an easement across the northern thirty feet of Schroeders'

---

[2] This partial summary judgment ruling is not challenged on appeal, although it is relied upon in Schroeders' arguments.

property, created by prescriptive use." *Schroeder I*, ¶ 5. Based in part on this prior holding, the District Court in the present case defined the issue before it at trial as "whether the balance of the road after 0.9 miles . . . is a public or private road." The court referred to this section of road—from the 0.9 mile mark to the 1.2 mile mark—as the "contested stretch," which is located just beyond the Schroeders' property.

¶11 After analyzing the evidence, including a site visit to the road, the District Court determined that Eagle Ridge Road is a public road, thirty feet in width, from the 0.9 mile mark to where it "touches the property described as 'Wood 11331'" on the Map. It also declared that the remainder of the "contested stretch"—beyond "Wood 11331"—is not a public road. Both the Schroeders and the County appeal. The Rellers, whose property lies along the private portion of the "contested stretch," are appellees in this case.

**STANDARD OF REVIEW**

¶12 We will affirm the factual findings of a district court sitting without a jury unless those findings are clearly erroneous. *Pedersen v. Ziehl*, 2013 MT 306, ¶ 10, 372 Mont. 223, 311 P.3d 765 (citing M. R. Civ. P. 52(a); *Steiger v. Brown*, 2007 MT 29, ¶ 16, 336 Mont. 29, 152 P.3d 705). "A district court's findings are clearly erroneous if they are not supported by substantial evidence, if the district court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed." *Pedersen*, ¶ 10 (citations omitted). In determining whether substantial credible evidence supports the district court's findings,

6

we review the evidence in the light most favorable to the prevailing party. *Pedersen*, ¶ 10 (citation omitted). We review a district court's conclusions of law for correctness. *Public Lands Access Ass'n v. Bd. of Co. Comm'rs*, 2014 MT 10, ¶ 14, ___ Mont. ___, ___ P.3d ___.

**DISCUSSION**

¶13    *1. Should this Court "clarify" the order of Judge Seeley at issue in* Schroeder I *in light of the District Court's order in this case?*

¶14    The doctrine of *res judicata* prohibits relitigation of a cause of action once a final judgment has been entered. *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 16, 331 Mont. 281, 130 P.3d 1267 (citations omitted). *Res judicata* is based on the principle of finality— "litigation must, at some point, come to an end." *Touris v. Flathead Co.*, 2011 MT 165, ¶ 12, 361 Mont. 172, 258 P.3d 1 (citations omitted). The doctrine of *res judicata* provides "that a final judgment on the merits by a court of competent jurisdiction is conclusive as to causes of action or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Hollister v. Forsythe*, 277 Mont. 23, 27, 918 P.2d 665, 667 (1996) (citations omitted). *Res judicata* applies when the following four criteria are met:

(1) The parties or their privies are the same;

(2) The subject matter of the action is the same;

(3) The issues related to the subject matter are the same; and

7

(4) The capacities of the person[s] are the same in reference to the subject matter and the issues between them.

*Baltrusch*, ¶ 16 (citation omitted). Of these four criteria, the identity of the issues is the "most important" factor in determining whether *res judicata* precludes a party's claim. *Hollister*, 277 Mont. at 27, 918 P.2d at 667 (citations omitted).

¶15 Although stating that they have no intention of retrying their case, the Schroeders nonetheless ask this Court "to take a 'second look' into [*Schroeder I*], because of new evidence." Noting that the Map was also used as evidence in *Schroeder I*, they offer that "[b]oth cases refer[] to the instrument that is recorded as prescribed by law, but two different Judgments are on record." Essentially, they argue that the two cases addressed the same issue and involved the same evidence, but reached different conclusions regarding the public or private nature of the road. They ask the Court to "clarify the meaning" of Judge Seeley's order regarding the portion of Eagle Ridge Road running across their property. In actuality, the Schroeders are seeking to re-litigate their case based on the outcome of this case, and would like a declaration that the road as it crosses their property is not a public road.

¶16 The Rellers and the County correctly argue that *res judicata* prohibits us from reconsidering Judge Seeley's order. All four criteria in our *res judicata* test are clearly established, and we decline to revisit the issue we specifically decided in *Schroeder I*. We note, however, that while the imposition of two judgments regarding the same road is unique and anomalous, the judgments addressed different sections of the road based upon

evidentiary records reflecting the differing practices and histories of those sections. Moreover, as the District Court noted, the Map contains an error. Indeed, it incorrectly depicts the location of Eagle Ridge Road as it crosses Schroeders' property, which helps to explain why Judge Seeley (addressing that middle section of the roadway) and Judge Sherlock (addressing the end section of the roadway) did not apply the Map in the same fashion. In conclusion, we may not revisit the ruling in *Schroeder I*.

¶17    *2. Did the District Court misapply the law and misapprehend the evidence of prescriptive use when it determined that no public prescriptive right exists over a portion of Eagle Ridge Road?*

¶18    A prescriptive easement is created by operation of law. The public may acquire a prescriptive easement over a private road if the claimant establishes that the use of the roadway was open, notorious, adverse, continuous and uninterrupted for the complete statutory period. *Heller v. Gremaux*, 2002 MT 199, ¶ 12, 311 Mont. 178, 53 P.3d 1259. "To establish the existence of a public road by prescription it must be shown that the public followed a definite course continuously and uninterruptedly for the prescribed statutory period together with an assumption of control adverse to the owner . . . ." *Hitshew v. Butte/Silver Bow Co.*, 1999 MT 26, ¶ 16, 293 Mont. 212, 974 P.2d 650 (citation omitted). The claimant bears the burden of establishing each element by clear and convincing evidence. *Brown & Brown of MT, Inc. v. Raty*, 2012 MT 264, ¶ 19, 367 Mont. 67, 289 P.3d 156. The element of "exclusivity," which applies in private prescriptive easement cases, is not required to establish a public prescriptive easement

because such an easement, by its very nature, involves public use. *Heller*, ¶ 12. Montana's statutory prescriptive period is five years. Section 70-19-404, MCA; *see also* § 70-19-405, MCA.

¶19 To be "open and notorious," the use of a claimed right must provide the landowner with actual knowledge of the claimed right, or be of such a character as to raise the presumption of notice. To be "continuous and uninterrupted," the use of a claimed right cannot be abandoned by the user or interrupted by an act of the landowner. *Heller*, ¶ 13 (citing *Hitshew*, ¶ 17). To be "adverse," the use of the easement must be exercised under a claim of right and not merely as a privilege or license revocable by the landowner; the landowner must know of and acquiesce to such a claim. *Heller*, ¶ 13 (citing *Swandal Ranch Co. v. Hunt*, 276 Mont. 229, 233, 915 P.2d 840, 843 (1996)).

¶20 In its Findings of Fact, Conclusions of Law, and Order, the District Court determined that only a portion of the "contested stretch" is a public road by prescriptive easement—from the 0.9 mile mark to the property described on the Map as "Wood 11331." The court based this determination on the fact that the Map "declared for all the world . . . that Eagle Ridge Road, at least as of the creation of the road/RID, went beyond the 0.9 mile mark . . . and ended where the road touched the property described as 'Wood 11331.'" The court determined that the remainder of the "contested stretch" was not subject to a prescriptive easement because the use of public funds to maintain it had been "intermittent and equivocal in nature." The court reasoned:

[S]ometimes the snowplow was titled to the County, and sometimes it was not; sometimes the plow operations were funded by the RID, sometimes they were funded by the Association itself without reimbursement by the RID; and sometimes work and services were not reimbursed by either the Association or the RID. *This murky situation did not place anyone on notice that the public was claiming an easement on the contested stretch of road.*

(Emphasis added.) The court also noted that it did not receive any testimony that any "hiker, biker, motorist, bird watcher, or other member of the public" commonly used the "contested stretch," and that there was "scant evidence" of public use.

¶21 The County contends that the District Court erred when it did not find that a public prescriptive easement exists over the entire "contested stretch." Addressing the elements of prescriptive easements, the County argues that the "open and notorious" element is satisfied because "[t]he County did not conceal its use or maintenance of the road." It cites *Brumit v. Lewis*, 2002 MT 346, ¶ 18, 313 Mont. 332, 61 P.3d 138, for the proposition that use is "open and notorious" when someone is observed using and maintaining a road, and such use and maintenance is regular and not concealed. The County cites testimony from Dave Burda (Burda), president of the Association and one of the snowplow operators who lives along the "contested stretch," that the RID paid public money for road maintenance and snow plowing every year but one since 1994. Burda also acknowledged that he was using a County owned vehicle to plow the entire 1.2 mile stretch of Eagle Ridge Road. The County argues that a prudent property owner would

11

have discovered the existence of the RID and the County's role in maintaining the road when the RID assessment appeared on his/her tax bill.

¶22 The Rellers respond that the County, in addressing the "open and notorious" element, has conflated its actions along the uncontested portion of the road with its actions along the "contested stretch." They argue that the District Court found a continuing distinction between the contested stretch and the remaining road, starting with the RID's creation, followed by the maintenance arrangements with Three Mile Transport and the actual maintenance on these portions. For instance, the court found that the County's maintenance of the "contested stretch" was very limited, and that a landowner on this section complained to the County that this portion of the road was not being maintained. The Rellers argue that the County's tax bill argument fails to address the "actual use of the contested stretch of the road, on the ground." They highlight the fact that the Map depicts Eagle Ridge Road ending at "Wood 11331."

¶23 We have previously held that extensive use alone may not be sufficient to satisfy the "open and notorious" element. *Amerimont, Inc. v. Gannett*, 278 Mont. 314, 924 P.2d 1326 (1996) (lacking a distinct and positive claim, "Amerimont's assertion that the extensive use of the road by the Oylers and the Smiths should have put the owners of the servient ground on notice that the road was being used as a primary access to get to their property is simply insufficient to prove that their use was open and notorious."). "'[A] distinct and positive assertion of a right hostile to the rights of the owner and brought to

12

the attention of the owner'" is required. *Amerimont*, 278 Mont. at 323, 924 P.2d at 1333 (citations omitted). Here, we agree with the Rellers' argument. From the RID's creation, inconsistent treatment has been evident—even the Map failed to identify the entire "contested stretch" as part of the RID. Such a clear conflict in the evidence is inconsistent with a "distinct and positive assertion" that would inform landowners that the County was asserting a hostile right over the *entire length* of Eagle Ridge Road and supports the District Court's findings. This is especially true given the fact that Association members completed much of the work along the "contested stretch." The County argues that expending RID money is sufficient to obtain a public prescriptive easement, but as the District Court noted, if this was correct, "many of the private driveways . . . would have to be deemed public roads" since they were often plowed along with the "contested stretch." We conclude that the District Court's findings are supported by the evidence and that, in the absence of further public use, the District Court did not err in concluding that a public prescriptive easement does not exist over the entirety of the "contested stretch," but only a portion.

¶24 The County argues that the ruling here is inconsistent with our decisions in *McClurg v. Flathead Co. Comm'rs*, 188 Mont. 20, 610 P.2d 1153 (1980), and *Rasmussen v. Fowler*, 245 Mont. 308, 800 P.2d 1053 (1990), but we find them distinguishable. In *McClurg*, the county, without the landowners' permission, widened, graded, sanded, and plowed the road over a long period of time, and the public used it for 33 years. *McClurg*,

188 Mont. at 22, 610 P.2d at 1155. In *Rasmussen*, the public used the road continuously and without permission for more than 50 years, and the county provided a grader for maintenance. *Rasmussen*, 245 Mont. at 312, 800 P.2d at 1056. As the District Court explained, unlike *McClurg*, "here we have a somewhat murky arrangement" where the original RID Map did not include most of the "contested stretch," maintenance arrangements did not generally include the "contested stretch," the snowplow changed hands, and several sources, including the Association and private individuals, funded the plowing operations.

¶25 Lastly, the County argues the District Court failed to afford the appropriate weight to the statutory requirement that RIDs be created only for public roads. As authority, the County cites § 7-14-2901, MCA, which applied to road improvement districts prior to its repeal in 2009. The County argues that § 7-14-2901, MCA, prevented the establishment of an RID on anything other than a public road. The County notes that the Montana Constitution also limits the use of RID funds: "Art. VIII, Section 1 of the 1972 Montana Constitution provides: 'Taxes shall be levied by general laws for public purposes.'" *Grossman v. Dept. of Nat. Resources*, 209 Mont. 427, 456-57, 682 P.2d 1319, 1334 (1984).

¶26 Although the County states it is not arguing that adoption of the RID alone creates an easement, its arguments rely on the faulty logic that the prohibition on the County spending public money on private roadways means that any roadway the County

14

maintains is necessarily a public road. As we have explained, the County's limited and inconsistent involvement in maintaining Eagle Ridge Road beyond the point where it reaches "Wood 11331," fails to give rise to a public prescriptive easement.

¶27 Affirmed.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER