**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 28 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WONDER RANCH, LLC,

      Plaintiff-counter-
      defendant-Appellant,

v.

UNITED STATES OF AMERICA and
UNITED STATES DEPARTMENT OF
AGRICULTURE, acting through the U.S.
Forest Service, and Melany Glossa, in her
capacity as Supervisor of the Beaverhead-
Deerlodge National Forest,

      Defendants-counter-
      claimants-Appellees.

No.   16-36071

D.C. No. 2:14-cv-00057-SEH

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted March 29, 2018
U of Idaho Moscow

Before:  TALLMAN, N.R. SMITH, and CHRISTEN, Circuit Judges.

---

     [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

In 2011, the United States Forest Service (Forest Service) filed a Statement of Interest asserting an easement over the Indian Creek Trail, which leads to the Lee Metcalf Wilderness adjacent to the ranch. In response, Wonder Ranch, LLC claimed exclusive ownership and control of the portion of the Trail that lies on its property, and the Forest Service counterclaimed for a public prescriptive easement. At a bench trial, the district court made factual determinations based on, among other things, the testimony of several witnesses. The district court ultimately entered judgment in favor of the government and Wonder Ranch timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291. We do not disturb the district court's findings of fact absent clear error. *Resilient Floor Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1088 (9th Cir. 2015). Applying this standard, we affirm the district court's judgment.[1]

1. Wonder Ranch first contends that the facts found by the district court do not establish open and notorious use. "Open and notorious use is such that it gives the owner of the servient estate actual knowledge of the hostile claim, or is of such character as to raise a presumption of notice because it is so obvious the owner could not be deceived." *Brimstone Mining, Inc. v. Glaus*, 77 P.3d 175, 181 (Mont. 2003). "[V]erbal communication [of a hostile intent] is unnecessary"—"word[] or

---

[1] As the parties are familiar with the facts, we do not recount them here.

conduct" suffices. *Id.* at 184 n.4; *see Brown & Brown of MT, Inc. v. Raty*, 289 P.3d 156, 162 (Mont. 2012).

The district court, in finding this element satisfied, emphasized maps designating the Trail as a Forest Service Trail as well as the extensive use of the Trail for commercial, recreational, and official purposes. The visitor maps standing alone would likely be insufficient to establish actual or presumptive notice since there is little reason to believe that the owners of Wonder Ranch had reason or occasion to consult them. *See Lewis & Clark Cty. v. Schroeder*, 323 P.3d 207, 212 (Mont. 2014). But the district court relied on more than just the visitor maps. For example, the district court found that "National Forest Trail Registers from 1969 and 1970 show[ed] as many as 30 recreational users per month" and "a 1972 Wonder Ranch journal entry describes the Trail as 'busier than the country store today.'" Beginning in the late 1950s, "[f]isherm[e]n—both locals and out-of-staters—[and] hunters" took advantage of the Trail. While use of a road "for access to recreational activities," such as "hunting, fishing and [accessing] picnicking grounds," generally does "not rise to the level necessary to establish a public prescriptive easement," *Pub. Lands Access Ass'n v. Boone & Crockett Club Found., Inc.*, 856 P.2d 525, 527–29 (Mont. 1993), the district court also found that

3

the Forest Service has maintained the Trail since 1959, carrying out "logging out, limbing and brushing, rock removal and bridge repair."

The regular and substantial presence of Forest Service personnel and recreational users on the Trail provided "actual knowledge of the claimed right, or [is] of such a character as to raise a presumption of notice." *Heller v. Gremaux*, 53 P.3d 1259, 1263 (Mont. 2002).[2] The district court did not err in concluding that the public's use of the Trail was open and notorious.

2. Wonder Ranch also asserts that use of the Trail occurred by permission.[3] "[N]eighborly accommodation is a form of permissive use which, by custom, does not require permission at every passing." *Raty*, 289 P.3d at 162 (alteration in original) (quoting *Tomlin Enters., Inc. v. Althoff*, 103 P.3d 1069, 1072 (Mont. 2004)). But "[b]efore 'neighborly accommodation' can defeat a claim of prescriptive right, the use of the land must arise from that accommodation."

---

[2] *Boone & Crockett*, 856 P.2d at 529 is not to the contrary. There, "law enforcement personnel were on the road . . . by [express] permission of the landowners." *Id.* In addition, while members of the public used the road for "fishing, camping and sight-seeing," they did so only "occasional[ly]," an intensity that "[did] not rise to the level of adverse possession." *Id.* at 529, 528.

[3] Separately, Wonder Ranch alleges that the public's use of the Trail during the prescriptive period lacked adversity. This contention fails because "the public's use coupled with [the Forest Service's] regular maintenance of a roadway without the landowner's permission is evidence of adverse use." *Hitshew v. Butte/Silver Bow Cty.*, 974 P.2d 650, 654 (Mont. 1999).

*Lyndes v. Green*, 325 P.3d 1225, 1230 (Mont. 2014) (citation omitted). The district court found that "it was customary in [the 1930s Indian Creek drainage] community to allow [one's] neighbor to cross another neighbor's land when needed, and to treat the other's property with respect while crossing[.]" But it also found that "the vast majority of public and [Forest Service] use of the Trail was not the product of neighborly accommodation." The district court did not clearly err in making those findings.[4]

Wonder Ranch also argues express permissive use. *See Larsen v. Richardson*, 260 P.3d 103, 124 (Mont. 2011). The district court found that although "some individuals sought permission of the Hudsons and their predecessors to use the Trail, . . . the vast majority of users did not." Wonder Ranch disputes the district court's characterization of the facts. Assuming Wonder Ranch is relying on Chris Hudson's testimony that he granted permission to trail users "[o]n so many occasions, [he] can't count," the district court was the finder of fact and we cannot say that it clearly erred by declining to take Chris Hudson's representations at face value.

---

[4] While *Boone & Crockett* indicated that neighborly accommodation may encompass use by the general public, the trial court in that case credited testimony "that there was a general understanding that the road was always open to public." 856 P.2d at 528. The district court here did not make any such finding.

3. Wonder Ranch objects that the district court failed to specify the five years of open, notorious, adverse, continuous and uninterrupted use fulfilling the statutory period. But Montana law does not require the statutory prescriptive period be narrowly identified so long as there is sufficient evidence to support the district court's finding that the elements were met for the statutory period. *See, e.g.*, *Warnack v. Coneen Family Tr.*, 923 P.2d 1087, 1090 (Mont. 1996). We find no error in the district court's conclusion that the elements of a public prescriptive easement had been met for the statutory period no later than 1973.[5]

4. Wonder Ranch also suggests that, even if the public acquired a prescriptive easement across the property, its rights were extinguished by the Forest Service's attempts to purchase an easement and its implied admissions that it had no easement. But the Forest Service's attempts to secure an express easement were not inconsistent with the existence of a public prescriptive easement. Several Forest Service employees testified that the agency had a policy of seeking recorded easements to "get . . . in writing" the access it already had so

---

[5] Wonder Ranch contends that the Federal Land Policy and Management Act (FLPMA) prohibits the Forest Service from acquiring an easement by prescription. *See* 43 U.S.C. § 1715(a). Because we affirm the district court's conclusion that a prescriptive easement arose even before the enactment of the FLPMA, we do not address the merits of the FLPMA argument.

as to avoid future disputes.  The district court did not clearly err in crediting this explanation.  *See Rafanelli v. Dale*, 924 P.2d 242, 249 (Mont. 1996).[6]

5. Wonder Ranch claims that it is entitled to attorney's fees.  28 U.S.C. § 2412(d)(1)(A).  Because the position taken by the United States was substantially justified, the district court did not err in denying Wonder Ranch relief under the Equal Access to Justice Act.  *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**AFFIRMED.**

---

[6] Moreover, the district court found that "[a]lthough the [Forest Service] did engage in prolonged negotiations with the Hudsons to acquire a written easement over the Property," it "continued to use and maintain the Trail as normal during such negotiations" and the signs guiding the public to "Trail #328" were never removed.  Wonder Ranch does not controvert these facts, and they militate against the notion that the Forest Service relinquished, implicitly or otherwise, the public's claim to a prescriptive easement.